[Civ. No. 10877. First Appellate District, Division One.—January 23, 1940.]

W. J. KIRKPATRICK, Appellant, v. J. ALICE STELLING, Respondent.

Louis Ferrari, G. D. Schilling, C. H. White and D. Bianco for Appellant.

John H. Riordan, as *Amicus Curiae*, on Behalf of Appellant.

Owen D. Richardson for Respondent.

PETERS, P. J.—Plaintiff, as assignee of a promissory note secured by a deed of trust on certain real property, brings this action against defendant for the deficiency alleged to be due after default and a sale of the real property constituting the security. The note and deed of trust were executed on July 7, 1934. The note was in the sum of $45,925, and was payable one year from date "in lawful money of the United States of America". The complaint alleges that the security for the note was duly sold on January 8, 1938 (whether appellant or a third person was the purchaser does not appear), and that the net proceeds of the sale were applied on the note; that after the proceeds of the sale were so applied there remained, and still remains, due a balance of $13,164.13, for which judgment is sought. The complaint does not allege that the property constituting the security was sold for its fair market value as of the day of sale, or what such fair market value was on that date. Defendant demurred to the amended complaint on the ground, among

others, that the complaint fails to contain the allegations required by section 580a of the Code of Civil Procedure as enacted in 1933, and as in force in 1934 when the note and deed of trust were executed, and as in force in 1935 when the note became due. The plaintiff contended such section was unconstitutional. Defendant waived the other grounds of her demurrer, and both parties stipulated that the question of the constitutionality of section 580a would be the sole ground urged on appeal. The trial court held the statute constitutional, and accordingly sustained the demurrer without leave to amend. After judgment was entered for the defendant plaintiff prosecuted this appeal.

Section 580a of the Code of Civil Procedure, which defendant contends is unconstitutional, was added to that code in the legislative session of 1933, and became effective in that year. The statute requires that, in actions for deficiency judgments after sale under a power of sale in a deed of trust or mortgage, the plaintiff must set forth in his complaint the amount of the entire indebtedness, the amount for which the property was sold, "and the fair market value thereof at the date of sale". The section further provides that, upon the application of either party made at least ten days before trial, the court shall, and at any time upon its own motion may, appoint an inheritance tax appraiser to appraise the property; that such appraisal shall be admissible in evidence, and the appraiser may be called and examined as a witness by either party or by the court; that before the court shall render any judgment in the action the court shall find the fair market value of the real property at the time of sale; that the court "may render judgment for not more than the amount by which the entire amount of the indebtedness due at the time of sale exceeded the fair market value of the real property or interest therein sold at the time of sale with interest thereon from the date of sale".

It has been uniformly held by the courts of this state that section 580a cannot lawfully be applied to any mortgage or deed of trust executed prior to its passage, whether the sale took place before or after the passage of the statute, because, to so apply it, would be to impair the obligation of the contract in violation of the federal Constitution. (*Bennett* v. *Superior Court,* 5 Cal. App. (2d) 13 [42 Pac. (2d) 80]; *Central Bank of Oakland* v. *Proctor,* 5 Cal. (2d) 237 [54 Pac. (2d) 718]; *Bank of America* v. *Dennison,* 8 Cal.

App. (2d) 173 [47 Pac. (2d) 296]; *Bechtel* v. *Nelson,* 10 Cal.
App. (2d) 66 [51 Pac. (2d) 99]; *Smith* v. *Davis,* 10 Cal. App.
(2d) 487 [52 Pac. (2d) 515]; *Rosenberg* v. *Janssen,* 11 Cal.
App. (2d) 15 [52 Pac. (2d) 952, 54 Pac. (2d) 721]; *Birk-
hofer* v. *Krumm,* 27 Cal. App. (2d) 513 [81 Pac. (2d) 609];
*Bank of America* v. *Burg Bros.,* 31 Cal. App. (2d) 352 [88
Pac. (2d) 196]; *Drapeau* v. *Smith,* 34 Cal. App. (2d) 84
[93 Pac. (2d) 157].) None of these cases passed upon the
constitutionality of the statute as applied to transactions
entered into after its passage.

Appellant contends that, as to its prospective opera-
tion, section 580a of the Code of Civil Procedure violates
article I, section 10 of the federal Constitution, which pro-
vides in part as follows: ''No State shall . . . make any
Thing but gold and silver coin a Tender in Payment of
Debts . . . ''. It is the theory of appellant that section 580a
of the Code of Civil Procedure brings about, in its opera-
tion, the substitution of property at a valuation in place
of money in payment of a lawful debt, and that this violates
the above-quoted provision of the federal Constitution. To
illustrate appellant's argument: If a debtor owes $20,000,
and the land given as security is sold, after default, for
$5,000, and the trial court determines the fair market value
at the time of sale was $12,000, the lender, under section
580a, is permitted to recover only $8,000 as a deficiency.
Under such circumstances, according to appellant, the lender
is being compelled, by force of the statute, to accept in pay-
ment of his debt, $5000, in cash received at the sale, *$7,000
in appraised value,* and an $8,000 deficiency judgment. It
is urged that the operation and effect of such a statute is to
substitute an appraised valuation for money. It is con-
tended that the very purpose of the federal Constitutional
provision above-quoted was to prevent any state from passing
any statute that would compel a creditor to accept property
at an appraised figure in lieu of money in payment of debts.
On this point appellant has filed an interesting, exhaustive
and scholarly brief, discussing, at length, the situation that
existed prior to the adoption of the federal Constitution, and
the evils that were intended to be remedied not only by the
tender clause above-quoted, but also the companion clause
in the same section prohibiting any state from coining money
or emitting bills of credit. It appears, therefrom, beyond

doubt, that, after the Revolution, and prior to the adoption of the federal Constitution, economic chaos was threatened, not only because of the issuance of worthless paper money by some of the states, but because many of the states passed special laws on behalf of the debtors that practically wiped out existing debts. By some of these laws the due payment of debts was suspended; existing debts, in direct violation of the terms of the contract, by statutory mandate, were permitted to be paid in instalments; and by other statutes debtors were permitted to tender to the creditor property of any sort in payment of the debts, or the creditor was compelled to take property of the debtor seized in execution at an appraised figure. Typical of these statutes is one passed in Virginia in 1782 (Hening's Laws of Virginia, vol. XI, p. 178) providing in substance that whenever a creditor secured a judgment against his debtor, the latter may "tender to the creditor, or his attorney, lands in discharge of the said judgment" at an appraised figure fixed as provided in the statute. The same statute permitted judgments to be satisfied in whole or in part by the tender of slaves appraised as set forth in the statute. Other laws permitted tobacco, hemp and flour to be tendered in payment of judgments. A South Carolina statute of 1785, referred to in the briefs, permitted the debtor in the action brought to collect a debt, to tender any property in payment of said debt at three-quarters of its appraised value.

Mr. Justice Story, in his "Commentaries on the Constitution of the United States", volume 2, page 242, sections 1371 and 1372, discusses the matter as follows:

"Sec. 1371. The next prohibition is, that no State shall 'make anything but gold and silver coin a tender in payment of debts'. This clause was manifestly founded in the same general policy which procured the adoption of the preceding clause. The history, indeed, of the various laws which were passed by the States in their colonial and independent character upon this subject, is startling at once to our morals, to our patriotism, and to our sense of justice. Not only was paper-money issued, and declared to be a tender in payment of debts; but laws of another character, well known under the appellation of tender laws, appraisement laws, instalment laws, and suspension laws, were from time to time enacted, which prostrated all private credit and all private morals. By some of these laws the due payment of debts was sus-

pended; debts were, in violation of the very terms of the contract, authorized to be paid by instalments at different periods; property of any sort, however worthless, either real or personal, might be tendered by the debtor in payment of his debts; and the creditor was compelled to take the property of the debtor, which he might seize on execution, at an appraisement wholly disproportionate to its known value. Such grievances and oppressions, and others of a like nature, were the ordinary results of legislation during the revolutionary war and the intermediate period down to the formation of the Constitution. They entailed the most enormous evils on the country; and introduced a system of fraud, chicanery, and profligacy, which destroyed all private confidence, and all industry and enterprise.

"Sec. 1372. It is manifest, that all these prohibitory clauses, as to coining money, emitting bills of credit, and tendering anything but gold and silver in payment of debts, are founded upon the same general policy, and result from the same general considerations. The policy is, to provide a fixed and uniform value throughout the United States, by which commercial and other dealings of the citizens, as well as the moneyed transactions of the government, might be regulated. For it may well be asked, why vest in Congress the power to establish a uniform standard of value, if the States might use the same means, and thus defeat the uniformity of the standard, and consequently the standard itself? And why establish a standard at all for the government of the various contracts which might be entered into, if those contracts might afterwards be discharged by a different standard, or by that which is not money, under the authority of State tender laws? All these prohibitions are, therefore, entirely homogeneous, and are essential to the establishment of a uniform standard of value in the formation and discharge of contracts. For this reason, as well as others derived from the phraseology employed, the prohibition of State tender laws will admit of no construction confining it to State laws which have a retrospective operation. Accordingly, it has been uniformly held, that the prohibition applies to all future laws on the subject of tender; and, therefore, no State legislature can provide that future pecuniary contracts may be discharged by anything but gold and silver coin."

It is to be noted that the statutss above-referred to, and Mr. Justice Story's discussion above-quoted, have no direct reference to debt secured by a real property mortgage or deed of trust. The arguments of appellant are fundamentally unsound in that they fail to give due weight to the fact that section 580a of the Code of Civil Procedure deals not with debts generally, but with a specialized transaction—a debt secured by a mortgage or deed of trust. We have no doubt that under the tender clause of the federal Constitution a state is prohibited from passing any statute providing, directly or indirectly, as to past or future debts, that the debtor may tender in total or partial discharge thereof property at an appraised valuation. But this is not the legal effect of section 580a. When a lending agency determines to lend money on the security of a specific parcel of real property, it is told by the statutes of California that in case of default, before it can secure a personal judgment against the borrower, it must first exhaust its security. (Sec. 726, Code Civ. Proc.) This it may do, in either of two ways—it may foreclose (and this is so whether the security transaction takes the form of a mortgage or deed of trust—sections 725a, 726, Code Civ. Proc.) or it may sell under the power of sale in the mortgage or deed of trust. Before the lending agency makes the loan, it sees and evaluates the property itself. That valuation is made by itself, at any figure it may determine. It is under no compulsion to lend any sum, and it, in its uncontrolled discretion, determines what value it will place on the property. Immediately upon the loan being made the lender secures a lien on that specific property—a lien which no act of the borrower can legally affect. This is a fundamental distinction between the type of statute that the tender clause prohibits and statutes of the nature of section 580a of the Code of Civil Procedure. It is one thing for a state by statute to provide that either as to past or future debts, in case of default, the creditor must accept property at a court appraisal in payment of the debt—property in which the creditor has no rights, legal or equitable, until he attaches or executes—property which the debtor may have when the loan is made, but which he may sell, transfer, or encumber before the debt falls due—and quite another to tell the lending agency by statute at the time that it makes the loan, that its primary security is a specific

parcel of land which it may evaluate at any figure it may see fit, and that if, in the case of default, it desires to realize on the security by sale (or foreclosure as will later appear) it must secure at private or judicial sale the fair market value of the security, and if it does not its recovery in a personal action will be measured accordingly. Such a statute, in our opinion, is not a tender law at all, and is clearly not within the purview of the tender clause.

In this state, as already pointed out, there can be but one action to recover a debt secured by a mortgage or deed of trust. The land is deemed to be the primary security. If the remedy of foreclosure is sought the land becomes the principal debtor and the borrower becomes the surety. (*Woodward* v. *Brown*, 119 Cal. 283 [51 Pac. 2, 542, 63 Am. St. Rep. 108].) The history of the law of mortgages demonstrates that equity has always extended its protective arm over foreclosure proceedings to protect, if necessary, the rights of the borrower. It has always been held that the foreclosure of mortgages (and the same rule obviously applies to foreclosure of deeds of trust) is a matter of purely equitable cognizance and that the controversy must be settled on equitable principles. (18 Cal. Jur., p. 276, sec. 561.)

This discussion of foreclosure is pertinent here. If the appellant herein, instead of selling under the deed of trust, had elected to foreclose the deed of trust as provided by section 725a of the Code of Civil Procedure, added to that code at the same legislative session at which section 580a was adopted, then appellant would have been subjected to the provisions of section 726 of the Code of Civil Procedure regulating foreclosures, which section was also amended in 1933. As so amended, that section provides that in the foreclosure action the decree shall establish the amount of the deficiency, if any; that the plaintiff in the foreclosure action, within three months of the date of the foreclosure sale may petition the court; that upon such petition the court shall take evidence of the fair market value of the property sold as of the date of sale; that the court shall find on this issue and render its money judgment against the defendant borrower "for the amount by which the amount of the indebtedness with interest and costs of sale and of action exceeds the fair value of the property . . . as of the date of sale". The section also provides that upon ap-

plication of either party, or upon its own motion, the trial court may appoint an inheritance tax appraiser to appraise the property as of the date of sale and such report shall be admissible in evidence, but not conclusive, on this issue. This section, as amended in 1933, has been upheld even as to its retroactive operation in so far as it deals with the foreclosure of deeds of trust. (*Miller* v. *Hart*, 11 Cal. (2d) 739 [81 Pac. (2d) 923].) It should be mentioned that one of the briefs in that case contended the section violated the tender clause, but apparently the Supreme Court did not consider the point even worthy of mention.

It is thus seen that, had the appellant herein pursued the alternative remedy of foreclosure, he would have been subjected to exactly the same restrictions as to the amount of the deficiency judgment as are provided by section 580a of the Code of Civil Procedure. This is of considerable importance. Section 726 of the Code of Civil Procedure is clearly valid. What this state has done, by the adoption of sections 580a and 726, is to declare that property sold for a debt secured by a mortgage or deed of trust, whether sold in a foreclosure proceeding or under a power of sale, must be sold for the fair market value. The state has also declared that if the creditor either buys in the property himself or sells to a third person at a figure less than the fair market value, he has participated in a sale, to the detriment of the debtor, that is unfair and unconscionable, and he must bear the consequences. It may be assumed that the legislature in passing such statutes had certain abuses in mind that the statutes were intended to remedy. In fact we are permitted to take judicial notice of the fact that in 1933, when these statutes were enacted, and prior and subsequent thereto, the market for real estate had almost entirely disappeared. Under such circumstances we are clearly of the opinion that, since under a contract of mortgage or deed of trust, the creditor agrees to look to the land as his principal debtor, and to the borrower merely as surety, that the state has the power to declare that the land can only be sold for the fair market value, and that the surety can only be held for the difference between the fair market value and the amount of the indebtedness. If sections 580a and 726 were to be given retroactive effect so as to apply to mortgages and deeds of trust executed prior to their passage in 1933, there might be some merit

in appellant's contentions, but here the appellant knew when the loan was made that in case of default, if he desired to secure a personal judgment against the creditor, he must sell at the fair market value.

Equity courts have gone far, in the exercise of their inherent and broad powers, and independently of statute, to protect the rights of all concerned in foreclosure proceedings. In *Suring State Bank* v. *Giese,* 210 Wis. 489 [246 N. W. 556, 85 A. L. R. 1477], the Supreme Court of Wisconsin affirmed a lower court decree confirming a sale of the property on the express condition that plaintiff be not entitled to a deficiency judgment at all—a decree which goes far beyond section 580a of the Code of Civil Procedure. In so doing the Wisconsin Supreme Court pointed out that the economic depression had practically wiped out the real estate market; that because of that fact the device of a judicial sale had failed of its intended purpose of securing the fair value of the property at such sale, and stated (p. 557): " . . . and the question arises whether a court of equity is wholly impotent to rise to the needs of justice and see that the parties are fairly and properly protected". The court pointed out that equity courts possess the inherent power to adopt any one of three measures to protect all concerned:

1. The court may decline to confirm the sale where the bid is substantially inadequate.

2. The court, in ordering a sale, may, in its discretion, take notice of the present emergency, and, after a proper hearing, fix a minimum or upset price at which the premises must be bid if the sale is to be approved.

3. The court may conduct a hearing, after sale, if it has not theretofore fixed an upset price, and establish the value of the property, and (p. 558): " . . . as a condition to confirmation, require that the fair value of the property be credited upon the foreclosure judgment. If an upset price has been established, the plaintiff may be required to credit this amount upon the judgment as a condition to confirmation". There is an exhaustive annotation on this case in 85 A. L. R. 1480, supplemented by an annotation in 89 A. L. R. 1087; related points are discussed in 90 A. L. R. 1330; 94 A. L. R. 1352; 108 A. L. R. 891; 115 A. L. R. 435. Under the Wisconsin case, and the authorities discussed in the various annotations referred to, *supra,* section 726 of

the Code of Civil Procedure merely puts into statutory form a power the court inherently possessed. By section 580a of the Code of Civil Procedure the legislature has merely carried over to sales under a power contained in a deed of trust or mortgage the same restrictions that are provided in the case of foreclosure actions.

It should also be mentioned that the United States Supreme Court has upheld, even as to its retroactive operation, a statute, in many respects, similar to section 580a of the Code of Civil Procedure. In *Richmond Mtg. & L. Corp.* v. *Wachovia B. & T. Co.*, 300 U. S. 124 [57 Sup. Ct. 338, 81 L. Ed. 552, 108 A. L. R. 886], the court had under consideration a North Carolina statute which provided that whenever a sale is had of mortgaged property, and the mortgagee becomes the purchaser, and thereafter the mortgagee seeks to secure a deficiency judgment, the mortgagor may show as a matter of defense that the property sold was fairly worth the amount of the debt, or that the amount bid was substantially less than the true value, and, upon such showing, may defeat any deficiency judgment against him, in whole or in part. The United . States Supreme Court, in upholding the statute retroactively as against the contention that the statute impaired the obligation of contracts, stated in part (p. 130) : ''The act alters and modifies one of the existing remedies for realization ·of the value of the security, but cannot fairly be said to do more than restrict the mortgagee to that for which he contracted, namely, payment in full. It recognizes the obligation of his contract and his right to its full enforcement but limits that right so as to prevent his obtaining more than his due. By the old and well-known remedy of foreclosure a mortgagee was so limited because of the chancellor's control of the proceeding.'' The court goes on to point out that foreclosure has been the classical method of realizing upon the mortgage security, and then continues (p. 131) : ''If, therefore, *the legislature of the State had elected altogether to abolish the remedy by trustee's sale* we could not say that it had not left the mortgagee an adequate remedy for the enforcement of his contract. But the legislature has by no means gone so far. The law has merely restricted the exercise of the contractual remedy to provide a procedure which, to some extent, renders the remedy by a trustee's

sale consistent with that in equity. This does not impair the obligation of the contract." (Italics ours.)

In *Honeyman* v. *Jacobs,* 306 U. S. 539 [59 Sup. Ct. Rep. 702, 83 L. Ed. 972], decided in April of 1939, the United States Supreme Court reaffirmed the Richmond Mortgage Corporation case, *supra.* In the Honeyman case the court had under consideration the validity, retroactively, of section 1083a, of the New York Practice Act. That statute is substantially similar to section 580a of the California Code of Civil Procedure, and, apparently, is not limited, as was the North Carolina statute, to cases where the mortgagee becomes the purchaser at the sale. The court held the statute was valid retroactively as against the argument that it violated the contract clause. In so holding the court pointed out that the mortgage debt was $15,000; that the property was sold for $7,500; that with interest and expenses the mortgagee was attempting to collect a deficiency of over $9,500; that the trial court found that the property was actually worth more than $25,000. The court stated (p. 703):

"The contract contemplated that the mortgagee should make himself whole, if necessary, out of the security but not that he should be enriched at the expense of the debtor or realize more than what would repay the debt with the costs and expenses of the suit. Having a total debt of $15,771.17, with expenses, etc., of $1,319.03, appellant has obtained through his foreclosure suit the property of the debtor found without question to be worth over $25,000. He has that in hand. We know of no principle which entitles him to receive anything more. Assuming that the statute before its amendment permitted a recovery of an additional amount through a so-called deficiency judgment, we cannot say that there *was any constitutional sanction for such a provision which precluded the legislature from changing it so as to confine the creditor to securing the satisfaction of his entire debt.*" (Italics ours.)

These cases, in our opinion, are conclusive in the present case. It is true that they involved the contract clause and not the tender clause of the Constitution, but it is also true that the reasoning therein contained is equally applicable to the tender clause. If the tender clause is applicable both cases were decided incorrectly. If the tender clause was

applicable we do not think the United States Supreme Court would have overlooked that fact.

On the authority of the above cases, and upon the reasoning above set forth, we hold that section 580a of the Code of Civil Procedure is not violative of the tender clause of the United States Constitution; that that clause merely compels the creditor to sell at the fair market value, and if he does not, limits his recovery accordingly; that such provision is in accord with the principles of equity governing foreclosure sales; that the statute is not a tender statute at all.

■ Appellant emphasizes that some, but not all, of the cases referred to in the above annotations are justified on the theory that they dealt with emergency legislation, and that section 580a as enacted in 1933 and reenacted in 1935 does not purport to be emergency legislation. The exact theory of appellant on this point is not clear. Emergencies do not create power, although they may offer the excuse for its exercise. (*Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398 [54 Sup. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481].) Appellant's major argument is that the section violates the tender clause of the federal Constitution. If that section prohibits legislation of the type of section 580a (which, as we have seen, it does not) it would prohibit it whether or not an emergency existed. There is no express or implied exception in this constitutional provision.

Appellant contends that no state from 1789 to the start of the last depression attempted to pass legislation of the type exemplified by section 580a, and contends that this indicates that the prohibition is so clear that no state, until recently, dared to pass such legislation. Whether it is true that no state has passed such legislation in the period in question we do not know. To search all the statutes of all the states for that period of nearly a hundred and fifty years would be an intolerable, if not an impossible, task. It is true that we have been referred to no case in a state or federal court, and independent research has disclosed none, that directly passes on the question as to whether such legislation violates the tender clause. So far as mortgage legislation comparable to section 580a is concerned, it could be argued that if various states have passed such legislation, that it so clearly does not violate the tender clause that no one has seen fit, until now, to challenge such legislation on

that ground. Either inference is possible. Neither inference has any legal effect on the actual question to be decided in this opinion. Whether any state has seen fit to pass such legislation in the past is a false quantity. Whether they have or not, the above cases and annotations indicate that for many years equity courts, regardless of statute, have exercised comparable powers in foreclosure proceedings. These cases demonstrate beyond question that the principles stated in sections 580a and 726 of the Code of Civil Procedure are not something new and novel, but are the statutory statement of equitable principles that have been recognized and enforced since the adoption of the Constitution.

Appellant, supported by *amicus curiae*, next urges that section 580a of the Code of Civil Procedure is unconstitutional because it unnecessarily interferes with the freedom of contract guaranteed by the due process clause, arguing, in this regard, that while the state has the right to regulate the collection of loans, it has no constitutional right to prohibit the collection in full of loans. It is also urged that the section denies "equal protection of the laws" because it discriminates against creditors secured by real property, in favor of unsecured creditors or creditors secured by personal property.

These contentions require but little attention in view of the discussion herein contained concerning the first point. As already pointed out, all section 580a of the Code of Civil Procedure, and the related section 726, do, is to tell the prospective lender that in cases of loans on real property hereafter made by you, in case of default by the borrower, you can sell the security, but you must sell at a fair sale—you must see to it, as a matter of fair play, in order to protect the borrower, that you receive or pay the fair market value of the property, and if you do not, your recovery will be limited accordingly. So understood, the section in question does not prohibit the "full" collections of loans or in any other way interfere with the freedom of contract guaranteed by the due process clause. As already held, all section 580a does is to carry over to sales of property under a power of sale in a deed of trust or mortgage those equitable principles that many courts have held have always existed in foreclosure proceedings.

 The contention that the section discriminates against creditors whose debts are secured by real property is obviously without merit. Real property mortgages and deeds of trust have always been considered, and properly so, as a proper subject of classification. That such classification is reasonable is too obvious to require discussion.

 In a supplemental brief filed by appellant it is urged that when section 580a of the Code of Civil Procedure was enacted in 1933, it was made self-limiting for a period of a little over three years; that the note and deed of trust here involved were executed on July 7, 1934; that the 1933 statute, including its self-limiting provision, became part of the note and deed of trust; that the statute expired in September, 1936; that the sale took place in January, 1938; that at that time, but for its reenactment in 1935, section 580a as enacted in 1933 would have been nonexistent and appellant would have had all the rights and remedies that existed prior to its adoption. Based on these premises, it is urged that the 1933 statute cannot be applied to this transaction because it had expired; and that the 1935 reenactment cannot be applied to notes and deeds of trust executed in 1934, because to do so would be to give the 1935 statute a retroactive effect, which, it has been held, in the many cases cited earlier in this opinion, cannot be done.

To this argument there are at least two complete answers. In the first place, section 580a of the Code of Civil Procedure as enacted in 1933, in our opinion, was not limited as to time. That section was part of the statute adding several new sections to and amending various other sections of the Civil Code and Code of Civil Procedure. (Stats. 1933, p. 1669, chap. 642.) The statute has nine separate distinct and wholly self-sufficient sections. Each section of the act, with the exception of section 9, either amends some section of the codes, or adds a new section thereto. Section 9 is the severability section. Section 4 is the section that provides for the addition of section 580a to the Code of Civil Procedure. In that section nothing is said as to any limitation of time—as there added to the Code of Civil Procedure the section is not limited as to time. Section 8 adds section 2924½ to the Civil Code. At the end of that section, without a new paragraph, and with nothing to indicate that the sentence applies

to any other section but section 8, appears this sentence: ''This act and the provisions of this section shall be effective to and until September 1, 1936.'' In spite of the use of the word ''act'' in this sentence, the only reasonable conclusion is that the time limitation was intended to apply only to section 2924½ of the Civil Code. This is the normal interpretation of section 8. If the legislature had intended the time limitation contained in the last sentence of that section to be applicable to all of the preceding seven sections, it would normally have added a separate section of the statute so declaring. At least it would have set the sentence forth in a separate paragraph.

Apparently the legislature of 1935 had some doubts on the matter. Accordingly, they caused to be reenacted the seven sections that had been amended or added in 1933 (Stats. 1935, p. 1802, chap. 650), but they did not reenact section 2924½ of the Civil Code that contained the time-limitation clause, thus clearly indicating that in 1933 they had intended only section 2924½ of the Civil Code to be limited as to time, and that as to the other seven sections, including section 580a of the Code of Civil Procedure, no limitation was intended. Section 580a of the Code of Civil Procedure was expressly ''reenacted'' in 1935. (Sec. 4, Stats. 1935, p. 1805, chap. 650.) By section 9 of the 1935 act the legislature declared: ''It is the intent of this act to reenact sections 2924, 2924b and 2924c of the Civil Code and sections 580a, 580b, 580c and 725a of the Code of Civil Procedure in order to continue the same in effect subsequent to September 1, 1936, *and remove any ambiguity created by the language of section 2924½ of the Civil Code as added by an act approved June 2, 1933, as to the time said sections shall be effective.* It is intended that sections . . . 580a . . . of the Code of Civil Procedure shall be effective without any time limitation thereon.'' (Italics ours.) From this review of the situation it seems clear that the legislature of 1935 ''reenacted'' section 580a simply out of an abundance of caution. Such reenactment, in our opinion, was unnecessary. The 1933 statute, in so far as it enacted section 580a, was not limited as to time.

There is another answer to appellant's contention even though it be admitted that section 580a as passed in 1933 was operative only until September 1, 1936. Although the pro-

visions of section 580a appertain to the remedy, in the many cases holding the section not retroactive already cited in this opinion, it was held that its provisions affected the substantial rights of the contracting parties to such a degree that to apply the statute to mortgages and deeds of trust executed prior to its passage would impair the obligation of contracts. This holding is fatal to appellant's present contention. When this deed of trust and note were executed in 1934, the provisions of section 580a became an integral part of the contract the same as if written therein. By that section appellant's rights were limited. The fact the statute was to become inoperative in 1936 could in no way affect the contractual rights of respondent. If section 8 of the 1933 statute above-quoted is given its broadest possible meaning, the legal effect would simply be that as to all mortgages and deeds of trust executed between the effective date of section 580a in 1933, and September 1, 1936, regardless of when the sale was held, the rights of the parties were to be measured by the statute as it existed at the time the mortgage or deed of trust and note were executed. There is no warrant for the interpretation that, if the sale were to be held after September 1, 1936, the old law should be applicable. Such an interpretation would make the substantial rights of the respondent dependent on the mere whim or caprice of appellant. Here the note was executed and fell due prior to 1936. The rights of the parties must, therefore, be governed by the 1933 statute.

For the foregoing reasons the judgment appealed from is affirmed.

Ward, J., and Goodell, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 21, 1940.