[No. 2581–2.   Division Two.   September 1, 1978.]

STANLEY J. TROHIMOVICH, ET AL, *Appellants,* v. THE
DIRECTOR OF THE DEPARTMENT OF LABOR AND
INDUSTRIES, ET AL, *Respondents.*

*Stanley J. Trohimovich* and *Richard A. Trohimovich,* pro se.

*Slade Gorton, Attorney General,* and *William T. Scharnikow* and *Gomer L. Cannon, Assistants,* for respondents.

PETRIE, J.—Stanley J. Trohimovich and Richard A. Trohimovich, for themselves, presumably for the marital communities composed of themselves and their respective spouses, and apparently for the business partnership doing business as Grays Harbor Motors, appeal to this court from a superior court judgment which dismissed their petition to review a notice and order of assessment issued by the Department of Labor and Industries dated December 19, 1975, which had determined that these appealing parties owed industrial insurance premiums in the amount of $439.32 for the period January 1 through September 30, 1975. Stanley J. Trohimovich appears to be the family and business spokesman, and we will hereafter refer to him as representative of all appealing parties.

Trohimovich demanded a jury trial pursuant to CR 38 and as authorized by article 1, section 21 of the Washington State Constitution and the seventh amendment to the United States Constitution. Trial was set for June 21, 1976, before the Honorable John W. Schumacher, and Trohimovich and the Department of Labor and Industries submitted trial briefs prior to that date. Upon review of those briefs the trial court tentatively determined that the issues raised by the petition for review were issues of law and not issues of fact. Accordingly, in an effort to conserve county funds, the trial court directed the local court administrator not to call the jury panel for that date.

The proceedings opened with the trial court explaining the reason for the absence of a jury panel and inviting Mr. Trohimovich to set forth any matters which he intended to present to a jury as the finders of fact. The court assured Mr. Trohimovich that if material factual issues were raised, a jury would be empaneled to resolve any factual disputes. Following Mr. Trohimovich's initial recitation of the issues as he envisioned them, the court permitted Trohimovich to

present an expanded offer of proof through testimony of the witnesses who were present.

After these presentations, it became apparent to the trial court that Mr. Trohimovich did not challenge either the number of hours worked by Trohimovich's employees or the premium rate per hour utilized by the Department in its method of calculating the total amount of premium due. Instead, Mr. Trohimovich presented several contentions which we summarize as follows:

1. RCW 51.48.130 is unconstitutional because it imposes upon the challenging employer the burden to prove the incorrectness of the tax assessed by the Department against the employer.

2. Officials and employees of the Department of Labor and Industries violated provisions of the state and federal constitutions when they failed to accept Trohimovich's checks in full satisfaction of the premium due, he having converted the total "dollars" due from what he termed the pseudo dollars into statutory dollars by a formula founded upon the daily final price fixings of gold on the London market and which recognized the value disparity between a statutory or "legal" dollar and the "paper" dollar as represented by the federal reserve notes then currently in circulation.

After the trial judge listened to Mr. Trohimovich's explanation of the issues and his attempted offers of proof, he (1) determined that all the issues raised were legal matters which presented no disputed material facts for a jury to resolve; and (2) denied Trohimovich's motion for a continuance to present the testimony of William C. Jacobs, a former director of the Department of Labor and Industries, who had apparently been served a subpoena issued over Mr. Trohimovich's signature, but who did not appear at the trial. Thereupon, the trial court resolved the issues as a matter of law and dismissed the petition for review. On his appeal, Mr. Trohimovich contends, in addition to the matters initially presented to the trial court, that the trial court erred (1) by denying him a constitutionally guaranteed

right to a jury trial; and (2) by denying his demand to present the testimony of Mr. Jacobs.

It is apparent to us that when the trial judge realized there was no dispute as to a material fact he, in effect, proceeded to resolve the legal issues pursuant to the requirements of a summary judgment. In other words, if Mr. Trohimovich's legal theory is correct, he should be entitled to a judgment in his favor as a matter of law; if his legal theory is incorrect, his appeal to the Superior Court should have been dismissed.

Accordingly, we must first review the record to ascertain whether or not a dispute exists as to any material fact.

When asked by the trial court to identify the factual matters which he expected to present to a jury and why he needed the former director of the Department of Labor and Industries to testify, Mr. Trohimovich explained:

> [E]very civilization throughout history has failed when we have gone to a fiat money system, which is where we are now. If the court wants to get a salary based on bushel baskets of paper, as the German people did in 1924, then I think the court should refuse to let Mr. Jacobs come in, the court should rule for the Department of Labor and Industries, and let's just sit back and wait for chaos, because it is going to come. Now if the court and the people want to stop this chaos, then we are going to have to revert to the Constitutional commands. We are going to have to stop these power mad agents of the people at the federal and state levels from disregarding the Constitution, get them in line, and we are going to have a decent country again.

His primary thesis is that article 7, section 6 of the Washington State Constitution mandates that "All taxes levied and collected for state purposes *shall be paid in money only* into the state treasury." (Italics ours.) Additionally, article 1, section 10 of the United States Constitution declares that: "No state shall . . . make any thing but gold and silver coin a tender in payment of debts; . . ." Therefore, Trohimovich's argument continues, his check, which converted pseudo dollars into statutory dollars,

should have been accepted in full satisfaction for all the premium due; he paid the taxes in the only manner authorized by the state and federal constitutions, in *money* only; and the State, through its Department, is violating those constitutions by requiring tender to it of something other than gold and silver.

Arguments substantially similar to that presented by Mr. Trohimovich have been uniformly rejected in both federal and state courts in recent years; some courts describe the argument as specious and others as frivolous. *Radue v. Zanaty,* 293 Ala. 585, 308 So. 2d 242 (1975); *Allen v. Craig,* 1 Kan. App. 2d 301, 564 P.2d 552 (1977); *Rush v. Casco Bank & Trust Co.,* 348 A.2d 237 (Me. 1975); *Chermack v. Bjornson,* 302 Minn. 213, 223 N.W.2d 659, *cert. denied,* 421 U.S. 915 (1974); *Leitch v. State Department of Revenue,* 16 Ore. App. 627, 519 P.2d 1045 (1974); *United States v. Wangrud,* 533 F.2d 495 (9th Cir.), *cert. denied,* 429 U.S. 818 (1976); *United States v. Hurd,* 549 F.2d 118 (9th Cir. 1977).

■ It remains only for us to state that the United States Congress is the only entity empowered to declare what shall be deemed legal tender. Congress has so declared. 31 U.S.C. § 392 provides that federal reserve notes shall be legal tender for *all* debts and taxes. This unique and broad power of Congress to declare what shall be money and to regulate its value for *all* purposes has been constitutionally recognized. *Norman v. Baltimore & O. R.R.,* 294 U.S. 240, 79 L. Ed. 885, 55 S. Ct. 407, 95 A.L.R. 1352 (1935); *Guaranty Trust Co. v. Henwood,* 307 U.S. 247, 83 L. Ed. 1266, 59 S. Ct. 847 (1939).

Whether it is "wise and expedient" for Congress to exercise its power in any given manner is a political question, not a judicial question. Almost 100 years ago, in one of the so-called legal tender cases, the United States Supreme Court recognized the power of Congress to declare United States treasury notes as legal tender and enunciated the principle:

[T]he question whether at any particular time, in war or in peace, the exigency is such, by reason of unusual and pressing demands on the resources of the government, or of the inadequacy of the supply of gold and silver coin to furnish the currency needed for the uses of the government and of the people, that it is, as matter of fact, wise and expedient to resort to this means, is a political question, to be determined by Congress when the question of exigency arises, and not a judicial question, to be afterwards passed upon by the courts.

*Juilliard v. Greenman,* 110 U.S. 421, 450, 28 L. Ed. 204, 215, 4 S. Ct. 122, 131 (1884).

Mr. Trohimovich's diatribe against public officials and his forceful enunciation of impending economic peril are no more forcefully stated than was the ringing dissent of Mr. Justice Field in *Juilliard:*

From the decision of the court I see only evil likely to follow. There have been times within the memory of all of us when the legal tender notes of the United States were not exchangeable for more than one–half of their nominal value. The possibility of such depreciation will always attend paper money. This inborn infirmity no mere legislative declaration can cure. If Congress has the power to make the notes a legal tender and to pass as money or its equivalent, why should not a sufficient amount be issued to pay the bonds of the United States as they mature? Why pay interest on the millions of dollars of bonds now due, when Congress can in one day make the money to pay the principal? And why should there be any restraint upon unlimited appropriations by the government for all imaginary schemes of public improvement, if the printing press can furnish the money that is needed for them?

*Juilliard v. Greenman, supra* at 470.

For a reasoned explanation of the economic evils involved and proposals attempting to control them *see* R. Wormser & D. Kemmerer, *Restoring "Gold Clauses" in Contracts,* 60 A.B.A.J. 942 (1974).

█ In the case at bench, it is apparent that rather than violating constitutional mandates, department officials and

employees followed the constitutional and statutory mandates of the law. Mr. Trohimovich's petition for review, as explained to the court, should have been (as it was) dismissed, as a matter of law, in summary fashion. His constitutional right to a jury trial was not infringed by the trial court's recognition that there was no dispute as to any material fact. *Nave v. Seattle,* 68 Wn.2d 721, 415 P.2d 93 (1966). There was no material fact issue about which Mr. Jacobs could have been called to testify. There was no problem as to who had the burden of proof. That concept means only that one party has the burden of persuasion as to any given disputed material fact; there was none. Finally, RCW 51.48.130 is not unconstitutional. *Tidewater Terminal Co. v. State,* 60 Wn.2d 155, 372 P.2d 674 (1962).

■ We have carefully reviewed the record and are convinced that Mr. Trohimovich appealed from the Superior Court judgment solely for the purpose of delaying payment of legitimately incurred premiums. Accordingly, pursuant to RAP 18.9(a), we award defendant $1,000 compensatory damages, plus costs on appeal. We constantly welcome aggrieved litigants who legitimately seek redress in this court, but we trust the imposition of this sanction will, in the future, tend to deter the filing of appeals for delay only. *See Harvey v. Unger,* 13 Wn. App. 44, 533 P.2d 403 (1975).

Judgment affirmed.

Reed, A.C.J., and Callow, J., concur.

Reconsideration denied October 3, 1978.

Review denied by Supreme Court February 2, 1979.