ARTHUR K. HELLERMANN AND V. LOUISE HELLERMANN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7957–79.    Filed December 30, 1981.

Arthur K. Hellermann and V. Louise Hellermann, pro se.
*Rogelio A. Villageliu,* for the respondent.

OPINION

EKMAN, *Judge*: Respondent determined a deficiency of $11,206.60 in petitioners' Federal income taxes for 1976. The sole issue for our decision is whether that portion of gain from the sale of property, which is attributable solely to inflation, is income within the meaning of the 16th Amendment.

All the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. The pertinent facts are summarized below.

Petitioners Arthur K. Hellermann and V. Louise Hellermann resided in Milwaukee, Wis., when they filed their joint return for 1976. They resided in Hendersonville, Tenn., when they filed their petition and amended petition herein.

Petitioners purchased four buildings in 1964 for $93,312. They sold the buildings in 1976 for $264,000, and reported a capital gain of $170,688 on their 1976 return. They paid the appropriate capital gain taxes, but failed to compute or pay the additional minimum tax on items of tax preference as required by sections 55 to 58, I.R.C. 1954.

Respondent contends that petitioners are liable for the minimum tax because capital gain is an item of tax preference under section 57(a)(9)(A).[1] Petitioners counter that they are not liable for the minimum tax and that they are entitled to a refund of capital gains tax paid in 1976.

Petitioners claim that much of their reported gain on the sale of the four buildings was due to inflation. They point out that the Consumer Price Index (CPI)[2] had approximately doubled between 1964 and 1976.[3] Thus, even though they received more dollars on the sale than they had paid to purchase the buildings, each 1976 dollar they received was

---

[1]This section was amended for taxable years ending after Oct. 31, 1978. We are concerned with it as it existed in 1976.

[2]This index is prepared by the Bureau of Labor Statistics. It measures economy-wide changes in the prices of goods and services as represented by the change in price of a fixed "market basket" of such consumer goods and services. L. Seidler & D. Carmichael, Accountant's Handbook 24.9 (1981).

[3]In June 1964, when petitioners purchased the buildings, the CPI for urban wage earners was 92.9. In December 1976, when they sold the buildings, it was 174.3.

worth less than each 1964 dollar they paid. From this they concluded that their economic gain on the sale was $88,167.[4] However, they concede that they had a nominal gain of $170,688.

Petitioners assert that they should not be taxed on their nominal gain, but only on their economic gain. They argue that the portion of their nominal gain which is attributable solely to inflation does not constitute taxable income within the meaning of the 16th Amendment. Instead, they contend that, economically speaking, such gain is a return of capital. As they correctly observe, tax on a return of capital is a direct tax, subject to apportionment.[5] They maintain that to the extent the Internal Revenue Code permits that portion of nominal gain which is attributable to inflation to be taxed, it is an unconstitutional exercise of the Congress' power. They conclude that the Code must be interpreted in a manner which does not permit such gain to be taxed as income. As an appropriate means to that end, petitioners suggest that we adjust nominal gain to reflect the effects of inflation.

Respondent rejects as irrelevant petitioners' use of the CPI, or other measures of inflation, to calculate taxable income. He contends that nominal capital gain is taxable income whether or not such gain represents an increase in economic value. We agree with respondent, and therefore, need not decide whether the CPI is an appropriate measure with which to adjust taxable income.[6]

We note at the outset that we have several times denied taxpayers deductions for losses due to inflation, on grounds that the tax law is not written to account for inflation.[7] These cases do not control the decision in this case because they deal

---

[4] The calculations they made to reach this result were based on the following two formulas:

(1) $\dfrac{\text{CPI in December 1976}}{\text{CPI in June 1964}} \times$ 1964 Purchase price $=$ Purchase price inflated to 1976 dollars

(2) 1976 Sales price − Purchase price inflated to 1976 dollars $=$ True gain on 1976 sale

[5] U.S. Const. art. I, sec. 2, cl. 3. See also U.S. Const. art. I, sec. 9, cl. 4.

[6] For a general discussion of the effects of inflation and use of economic indicators, see Note, "Inflation and the Federal Income Tax," 82 Yale L.J. 716 (1973).

[7] *Sibla v. Commissioner*, 68 T.C. 422, 430–431 (1977); *Gajewski v. Commissioner*, 67 T.C. 181, 193–194 (1976); *Cunningham v. Commissioner*, T.C. Memo. 1981–365; *Milkowski v. Commissioner*, T.C. Memo. 1981–225.

with deductions, not income. Deductions are a matter of legislative grace, and the Congress has absolute discretion to refrain from taxing what would otherwise be taxable income. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). In contrast, Congress may not constitutionally tax as income, without apportionment, receipts which represent a return of capital. *Southern Pacific Co. v. Lowe*, 247 U.S. 330 (1918); *Burnet v. Logan*, 283 U.S. 404 (1931); *Kerr v. Commissioner*, 38 T.C. 723 (1962), affd. 326 F.2d 225 (9th Cir. 1964).

We reject petitioners' contention that nominal gain is not taxable income within the meaning of the 16th Amendment[8] on two grounds. First, we rely on the well-established doctrine that Congress has the power and authority to establish the dollar as a unit of legal value with respect to the determination of taxable income, independent of any value the dollar might also have as a commodity. See *Norman v. Baltimore & Ohio Railroad Co.*, 294 U.S. 240 (1935); *Nortz v. United States*, 294 U.S. 317 (1935); *Perry v. United States*, 294 U.S. 330 (1935); *Legal Tender Cases*, 79 U.S. (12 Wall.) 457 (1870). In the *Legal Tender Cases, supra,* the Supreme Court held that Congress had the power to declare treasury notes ("greenbacks"), which were backed by gold, to be legal tender. The Court held that paper money could be on a par with gold coins because both had the same legal value. *Legal Tender Cases, supra* at 530. The Court recognized that the statutory value of the nation's currency might not correspond to the market value of the bullion which backed the paper or from which the gold coins were made. It termed this discrepancy the difference between legal and intrinsic value. However, it did not doubt that Congress had the power to legislate such a difference. The Court viewed the Constitution as being "designed to provide the same currency, having a uniform legal value in all the States. * * * for this reason the power to coin money and regulate its value was conferred upon the Federal government," and it reasoned that "Whatever power there is over the currency is vested in Congress." *Legal Tender Cases, supra* at 545.

---

[8]"The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

The cases reviewing the Gold Reserve Act of 1934, *Norman v. Baltimore & Ohio Railroad Co., supra, Nortz v. United States, supra,* and *Perry v. United States, supra,* further extended the power of Congress with respect to the currency. These cases challenged the Gold Reserve Act of 1934[9] as an unconstitutional impairment by Congress of the obligation of contract, both public and private. The Gold Reserve Act had effectively taken the United States off the domestic gold standard by removing gold coins from circulation as legal tender. This affected certain bonds containing so-called "gold clauses," which were intended to protect the bondholder against devaluation of the currency by providing that the bonds would be paid off in gold of a particular weight and fineness. The Court held that these clauses were invalid insofar as they interfered with Congress' broad and comprehensive power to regulate the value of the currency and to create a unitary currency. *Norman v. Baltimore & Ohio Railroad Co., supra* at 316. The Court found that an expansive interpretation of the congressional power over revenue, finance, and currency was justified by:

the aggregate of the powers granted to the Congress, embracing the powers to lay and collect taxes, to borrow money, to regulate commerce with foreign nations and among the several States, to coin money, regulate the value thereof, and of foreign coin, and fix the standards of weights and measures, and the added express power "to make all laws which shall be necessary and proper for carrying into execution" the other enumerated powers. [*Norman v. Baltimore & Ohio Railroad Co., supra* at 303, citing *Juilliard v. Greenman,* 110 U.S. 421, 439–440 (1884).]

Under this implicit constitutional authority, the Court concluded that Congress could choose "a uniform monetary system, and * * * reject a dual system, with respect to *all* obligations within the range of the exercise of its constitutional authority." (Emphasis added.) *Norman v. Baltimore & Ohio Railroad Co., supra* at 316.

Petitioners concede that Congress has the power to require that the income tax be paid in dollars as legal tender, but argues that it does not have the power to measure gain in terms of dollars, because such dollars do not have a constant value. Given the reasoning behind the holding of the *Legal*

---

[9]Gold Reserve Act of 1934, 48 Stat. 337.

*Tender Cases, supra,* and *Norman v. Baltimore & Ohio Railroad Co., supra,* we must disagree. Dollars have constant legal value under the uniform monetary system created by Congress.[10] When petitioners sold the buildings in 1976, they realized a gain in legal value. The 16th Amendment does not prevent the Congress from taxing such gain as income if it chooses to do so.

As our second ground for rejecting petitioners' arguments, we rely upon the doctrine of common interpretation. As was stated by Judge Learned Hand, "[the] meaning [of income] is * * * to be gathered from the implicit assumptions of its use in common speech." *United States v. Oregon-Washington R. & Nav. Co.,* 251 F. 211, 212 (2d Cir. 1918). Thus, the meaning of income is not to be construed as an economist might, but as a layperson might. Petitioners received many more dollars for the buildings than they had paid for them. The extra dollars they received are well within the common perception of income, even though each 1976 dollar received represents less purchasing power than each 1964 dollar paid. Petitioners' nominal gain may or may not equal their real gain in an economic sense. Nonetheless, neither the Constitution nor tax laws "embody perfect economic theory." See *Weiss v. Wiener,* 279 U.S. 333, 335 (1929).

Based on the foregoing, we find that petitioners' nominal gain represented a change in legal value. Thus, petitioners' nominal gain is taxable income within the meaning of the 16th Amendment. Accordingly, we hold that petitioners are liable for the minimum tax as determined by respondent. Further, because petitioners have not sustained their burden of proving that they had a lesser capital gain on sale of the buildings than

---

[10]In some instances, this and other courts have treated rare gold and silver coins as property, not as legal tender, and thus have determined gain on receipt or exchange of such coins based upon the coins' fair market value rather than their legal value. See, e.g., *Cal. Federal Life Insurance Co. v. Commissioner,* 76 T.C. 107 (1981); *Joslin v. United States,* an unreported case (C.D. Utah 1981, 81–2 USTC par. 9643), affd. (10th Cir., Dec. 9, 1981, 81–2 USTC par. 9813); *Cordner v. United States,* an unreported case (C.D. Cal. 1980, 45 AFTR 2d 80–1677, 80–1 USTC par. 9441). In this case, there was no evidence that petitioners received anything other than paper dollars which were concededly legal tender.

they reported, there is no overpayment of income taxes to which they are entitled.

*Decision will be entered for the respondent.*