## RICHARD L. SOLYOM v. THE MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION

[No. 337, September Term, 1982.]

*Decided December 8, 1982.*

The cause was argued before MORTON, MOYLAN and MOORE, JJ.

*Tracy E. Mulligan* and *Edwin Vieira, Jr.*, for appellant.

*Arthur S. Drea, Jr.*, with whom were *Sanford E. Wool* and *Laurie Sue Borman* on the brief, for appellee.

*Amicus curiae* brief of Senator Jesse Helms and Representative Ron Paul, United States Congress filed, *Hugh L. Reilly* and *Professor Henry Mark Holzer* on the brief.

MORTON, J., delivered the opinion of the Court.

The Maryland-National Capital Park and Planning Commission, a public body engaged in the governmental function of furnishing parks and public recreation areas in the Maryland-Washington Metropolitan District in Prince George's and Montgomery Counties, brought a petition for condemnation in the Circuit Court for Montgomery County of a 1,253 square foot parcel of land in order to complete the development of a local park. Richard L. Solyom, owner of a one-ninth interest in the property, counterclaimed seeking a declaratory judgment that the Commission was obligated under Article I, Section 10, Clause 1 of the United States Constitution, to "tender gold and silver coin, dollar for dollar, in payment of the debt determined by the condemnation judgment . . . to be owed . . . ." The Commission moved to strike and dismiss the counterclaim and for summary judgment thereon. The trial judge (Fairbanks, J.), concluding that Article 1 did not compel payment in specie, dismissed

the counterclaim and Solyom filed this timely appeal from that dismissal and various other orders and rulings predicated upon it.[1]

The constitutional provision upon which appellant relies for the proposition that in order to be fully compensated for his interest in the land he must be paid in specie is Article I, Section 10, Clause 1 of the United States Constitution, which provides:

> "No State shall ... make any Thing but gold and silver Coin a Tender in Payment of Debts ...."

As appealing as the argument may seem to economists such as Mr. Solyom, Dr. John A. Sparks, Dr. Philip D. Bradley, and Dr. Elgin Groseclose,[2] and Senator Jesse Helms and Representative Ron Paul of the United States Congress,[3] it must fail.

Although some authorities see a serious question as to whether the framers of the constitution intended to prohibit the use of legal tender paper money,[4] it was soon taken for granted in this country that the federal government did have the power to emit paper money. Congress, as early as the War of 1812, directed the issue of United States notes as currency with the quality of legal tender and in 1884, in the last of the Legal Tender Cases, the Supreme Court deter-

---

**1.** These are: the court's order denying his motion to rescind the order dismissing the counterclaim and permit the taking of expert testimony, its refusal to instruct the jury that condemnation damages be paid in gold or silver coin only, its order denying his renewed motion to rescind the order dismissing the counterclaim, its order denying his motion for a directed verdict, its order denying Solyom's motion for judgment notwithstanding the verdict or in the alternative for a new trial, and the court's judgment on verdict of acquision.

**2.** Doctors Sparks, Bradley and Groseclose, although not permitted to testify, did file with the circuit court affidavits tracing the history of United States monetary policy and predicting the gloomiest of economic futures.

**3.** Senator Helms and Representative Paul filed with this Court a brief *amici curiae* setting out, among other things, a collection of Bills introduced in the House and Senate during the 1981 Session calling for reinstatement of the dollar as a gold reserve currency and the stabilization of the value of the dollar.

**4.** *See* Dam, The Legal Tender Cases. The Supreme Court Reporter (1981), p. 367.

mined that Congress could do so in time of peace as well as war. *Juilliard v. Greenman,* 110 U.S. 421 (1884). The Court there stated that Congress, under its powers to borrow money on the credit of the United States and to issue circulating notes for the money borrowed, was authorized to establish a uniform national currency, either in coin or in paper, and to make that currency, dollar for dollar, legal tender for the payment of all debts, public and private.

Pursuant to its power over the monetary system, Congress in 1933 provided, as currently set out at 31 U.S.C.A., § 463, that:

"Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts."

The Supreme Court, concluding in *Norman v. Baltimore & O. R. Co.,* 294 U.S. 240 (1935), that "gold clause" stipulations in preexisting local governmental and private obligations, interfering as they did with Congress's monetary power, could be abrogated by that statute, stated:

"In the currency as thus provided, States and municipalities must receive their taxes; railroads, their rates and fares; public utilities, their charges for services. The income out of which they must meet their obligations is determined by the new standard. Yet, according to the contentions before us, while that income is thus controlled by law,

their indebtedness on their 'gold bonds' must be met by an amount of currency determined by the former gold standard. Their receipts, in this view, would be fixed on one basis; their interest charges, and the principal of their obligations, on another.... It requires no acute analysis or profound economic inquiry to [perceive] the dislocation of the domestic economy which would be caused by such a disparity of conditions ....

We are not concerned with consequences, in the sense that consequences, however serious, may excuse an invasion of constitutional right. We are concerned with the constitutional power of the Congress over the monetary system of the country and its attempted frustration." 290 U.S. at 315-316.

We perceive no conflict between Congress's exercise of that monetary power and Article I, Section 10, Clause 1 of the United States Constitution. That constitutional provision merely prohibits the states, as opposed to the federal government, from making "any Thing but gold and silver Coin a Tender in Payment of Debts"; that is, from declaring legal tender anything other than gold or silver. *See United States v. Rifen,* 577 F.2d 1111 (8th Cir. 1978). Faced with the issue whether the state treasurer was constitutionally required to tender a state income tax refund in gold or silver coin, the Supreme Court of Minnesota, in *Chermack v. Bjornson,* 223 N.W.2d 659, 661 (Minn. 1974), *cert denied,* 421 U. S. 915 (1975), aptly stated:

"The mere utilization of a standard of legal tender prescribed by Congress is not state action as prohibited by U.S. Const., Art. I, § 10, but rather an effectuation of validly exercised constitutional power of Congress [under] U. S. Const., Art. I, § 8."

We are in agreement and accordingly find no error committed by the trial judge.

*Judgment affirmed; costs to be paid by appellant.*