[Civ. No. 23634. Third Dist. Sept. 28, 1984.]

GLADYS L. SPURGEON, Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

COUNSEL

Francis T. Cornish for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Edward P. Hollingshead and Charles C. Kobayashi, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**SIMS, J.**—Plaintiff Gladys L. Spurgeon appeals from an adverse judgment in her action for refund of allegedly overpaid California state income tax. Plaintiff claims that: (1) defendant Franchise Tax Board (hereafter Board) erroneously calculated her income from the sale of an apartment building because it measured her capital gain in terms of "dollars," without compensating for the dollar's declining purchasing power; (2) the Board, as a creature of the state, is required by the federal Constitution to measure capital gain with reference to the value of gold or silver coin (see U.S. Const., art. I, § 10, cl. 1); and (3) Revenue and Taxation Code[1] section 17071 is constitutionally infirm because it fails to give taxpayers adequate notice that capital gain is measured in "dollars." We reject plaintiff's contentions and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The essential facts, as set forth in the parties' stipulation below, are as follows: In 1959 plaintiff purchased an apartment building for $109,000. In 1976, plaintiff sold the building for $152,000. In the interim plaintiff took deductions on her personal income tax returns for depreciation in the amount of $31,543.27.

In reporting the sale of the building on her 1976 tax return, plaintiff calculated the cost of the building at $77,456.73, representing the original cost ($109,000) less depreciation previously taken ($31,543.27). She then reported her long-term gain as $74,543.27, representing the sales price ($152,000) less her cost ($77,456.73). Because one-half of long term capital gain is taxable, plaintiff showed $37,271.63 as taxable income on her tax return.

The Board found two errors on plaintiff's return. First, plaintiff omitted a capital gain of $3,860,[2] on which the Board assessed a tax of $424.60,

---

[1]Statutory references are to the Revenue and Taxation Code unless otherwise indicated.

[2]Apparently, plaintiff had understated the depreciation she had taken in prior years.

and second, plaintiff omitted the minimum tax on items of tax preference, including capital gains, in the amount of $1,629.82. (§ 17062) The Board claimed plaintiff owed $2,647.11 in additional tax and interest. Plaintiff paid under protest the amount demanded, and filed a claim for refund, which was denied. Plaintiff's appeal to the State Board of Equalization was denied, as was a petition for rehearing.

Plaintiff then filed this action in Sacramento County Superior Court. Plaintiff demanded a refund of the additional tax on the ground the sale of the building yielded no capital gain. Plaintiff claimed the dollar in 1976 was worth less than half what it was worth in 1959, and that consequently the sale price was actually lower than the purchase price.

Relying upon *Hellermann* v. *Commissioner* (1981) 77 T.C. 1361, where plaintiff's argument was recently rejected, the trial court ordered that plaintiff take nothing by her complaint and ordered judgment for defendant. Plaintiff appeals.

Discussion

I

Plaintiff first contends the Board erroneously calculated her capital gain because it failed to account for the declining purchasing power of the dollar. The contention, though intuitively appealing, is meritless.

As the trial court properly noted, plaintiff's argument was recently tendered and rejected in *Hellermann* v. *Commissioner, supra,* 77 T.C. 1361. That case involved a challenge to the federal minimum tax (26 U.S.C. §§ 55-58), which was virtually identical in principle to plaintiff's contention here. In *Hellermann* the plaintiffs claimed that much of their reported capital gain was due to inflation and represented a return of capital rather than taxable income. (Pp. 1362-1363.)[3] Relying on the *Legal Tender Cases* (1871) 79 U.S. (12 Wall.) 457 [20 L.Ed. 287] and *Norman* v. *Baltimore & O. R. Co.* (1935) 294 U.S. 240 [79 L.Ed. 885 [55 S.Ct. 407, 95 A.L.R. 1352]], the *Hellermann* court rejected the plaintiffs' argument. The court concluded that Congress had the authority to create a uniform national monetary system under which the dollar has a constant legal value. (Pp. 1365-1366.) It followed from this authority that Congress could measure its income tax using the national unit of value, even though the result is a tax upon "nominal" rather than economic gain.

---

[3]Although plaintiff couches her argument in terms of the rising price of gold rather than in terms of inflation, *Hellermann* is directly on point. In both cases the evil complained of is the declining purchasing power of the United States dollar in economic terms.

As the trial court properly recognized, the federal and California definitions of "income" are identical, and it was proper to rely on federal precedent to interpret the California statute. (See § 17071; 26 U.S.C. § 61; *Calhoun* v. *Franchise Tax Bd.* (1978) 20 Cal.3d 881, 884-886 [143 Cal.Rptr. 692, 574 P.2d 763]; *Holmes* v. *McColgan* (1941) 17 Cal.2d 426, 430 [110 P.2d 428]; *Rihn* v. *Franchise Tax Board* (1955) 131 Cal.App.2d 356, 360 [280 P.2d 893].) The trial court's application of *Hellermann* to the California statute, section 17071, was proper, as was its conclusion that section 17071 could be applied without compensating for the dollar's declining purchasing power.

## II

Plaintiff concedes that *Hellermann* is good law as applied to the federal government. Plaintiff claims, however, that the State of California lacks the power to levy its own tax using the federally created unit of value. Plaintiff claims the states are prohibited from measuring their taxes in "dollars" by article I, section 10, clause 1 of the United States Constitution, which provides that "No State shall . . . make anything but gold and silver coin a tender in payment of debts; . . ." Plaintiff interprets this clause to mean that "a state dollar must be either gold or silver."

Plaintiff's contention would receive high marks for ingenuity were it not for the fact that her argument has been made, and uniformly rejected, in numerous other states. (See *First Nat. Bank of Black Hills* v. *Treadway* (S.D. 1983) 339 N.W.2d 119, 120; *Union State Bank* v. *Miller* (N.D. 1983) 335 N.W.2d 807, 809; *People* v. *Lawrence* (1983) 124 Mich.App. 230 [333 N.W.2d 525, 526]; *Richardson* v. *Richardson* (1983) 122 Mich.App.531 [332 N.W.2d 524, 525-526]; *Solyom* v. *Maryland-National Capital, etc.* (1982) 53 Md.App. 280 [452 A.2d 1283, 1285]; *City of Colton* v. *Corbly* (S.D. 1982) 323 N.W.2d 138, 139; *Kauffman* v. *Citizens State Bank of Loyal* (1981) 102 Wis.2d 528 [307 N.W.2d 325, 327-328]; *Trohimovich* v. *Dept. of Labor and Industry* (1978) 21 Wn.App. 243 [584 P.2d 467, 469-470]; *Allen* v. *Craig* (1977) 1 Kan.App.2d 301 [564 P.2d 552, 556-557]; *Radue* v. *Zanaty* (1975) 293 Ala. 585 [308 So.2d 242, 244-245]; *Leitch* v. *State, Department of Revenue* (1974) 16 Ore.App. 627 [519 P.2d 1045, 1046]; *Chermack* v. *Bjornson* (1974) 302 Minn. 213 [223 N.W.2d 659, 660-661], cert. den. (1975) 421 U.S. 915 [43 L.Ed.2d 780, 95 S.Ct. 1573].) These cases have reasoned as follows:

■ Article I, section 8 of the federal Constitution grants Congress the power to coin money and regulate the value thereof. This constitutional provision was designed to grant Congress the exclusive power to provide a uniform currency, with the same legal value, throughout the states. (*Norman*

v. *Baltimore & O. R. Co., supra,* 294 U.S. at p. 303 [79 L.Ed. at p. 900].) Congress has exercised its constitutional power by enacting a statute providing that United States currency is legal tender for all debts, including taxes. (31 U.S.C. § 5103.) Article I, section 10, clause 1 is not a literal directive to the states to conduct their monetary transactions in gold or silver coin; rather, the clause is intended to prevent states from creating new forms of legal tender not recognized or authorized by the federal government. (See *Kirkpatrick* v. *Stelling* (1940) 36 Cal.App.2d 658, 662-664 [98 P.2d 566].)[4] Consequently, the out-of-state cases cited above have concluded that, where states have required that debts be paid in dollars, article I, section 10, clause 1 is simply inapplicable, because the "dollar" was created by the Congress rather than by any state government.

We see no reason to disturb the formidable uniformity of judicial views reflected in the wide acceptance of the foregoing analysis. Plaintiff's contention that defendant could not collect her taxes in dollars is rejected.

### III

Plaintiff finally claims that section 17071 inadequately defines "income" because it does not provide notice that capital gains will be measured in terms of "dollars." We disagree.

As we have recently explained, " 'It is true that "[c]ivil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts. . . ." *(Morrison* v. *State Board of Education,* 1 Cal.3d 214, 231 [82 Cal.Rptr. 175, 461 P.2d 175] and

---

[4]In *Kirkpatrick,* Justice Raymond Peters provides a detailed history of the enactment of article I, section 10, clause 1 of the federal Constitution. (36 Cal.App.2d at pp. 662-664.) *Kirkpatrick* concludes the constitutional provision was designed to remedy a situation where "after the Revolution, and prior to the adoption of the federal Constitution, economic chaos was threatened, not only because of the issuance of worthless paper money by some of the states, but because many of the states passed special laws on behalf of the debtors that practically wiped out existing debts. By some of these laws the due payment of debts was suspended; existing debts, in direct violation of the terms of the contract, by statutory mandate, were permitted to be paid in instalments; and by other statutes debtors were permitted to tender to the creditor property of any sort in payment of the debts, or the creditor was compelled to take property of the debtor seized in execution at an appraised figure. Typical of these statutes is one passed in Virginia in 1782 (Hening's Laws of Virginia, vol. XI, p. 178) providing in substance that whenever a creditor secured a judgment against his debtor, the latter may 'tender to the creditor, or his attorney, lands in discharge of the said judgment' at an appraised figure fixed as provided in the statute. The same statute permitted judgments to be satisfied in whole or in part by the tender of slaves appraised as set forth in the statute. Other laws permitted tobacco, hemp and flour to be tendered in payment of judgments. A South Carolina statute of 1785, referred to in the briefs, permitted the debtor in the action brought to collect a debt, to tender any property in payment of said debt at three-quarters of its appraised value." *(Id.,* at p. 663.)

authorities there cited; *Orloff* v. *Los Angeles Turf Club*, 36 Cal.2d 734, 739 [227 P.2d 449].) However, " '[r]easonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language.' [Citation.] *It will be upheld if its terms may be made reasonably certain by reference to other definable sources."* (*American Civil Liberties Union* v. *Board of Education,* 59 Cal.2d 203, 218 [28 Cal.Rptr. 700, 379 P.2d 4]; *People* v. *Victor,* 62 Cal.2d 280, 300 [42 Cal.Rptr. 199, 398 P.2d 391].)' (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 405 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].) To be valid, a tax statute must prescribe a standard sufficiently definite to be understandable to the average person who desires to comply with it. (*Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization, supra,* 30 Cal.App.3d at p. 1020 [106 Cal.Rptr. 867].)" (*Duffy* v. *State Bd. of Equalization* (1984) 152 Cal.App.3d 1156, 1173 [199 Cal.Rptr. 886], italics added.)

As we noted in part I, *ante,* section 17071, which defines gross income, is a virtual copy of its federal counterpart, Internal Revenue Code section 61 (26 U.S.C. § 61). (*Calhoun* v. *Franchise Tax Bd., supra,* 20 Cal.3d at pp. 884-886.) The obvious parallelism of the federal and state statutes, acknowledged by plaintiff in her brief, requires that one wishing to comply with the state provision look to the federal counterpart for guidance. (See *Calhoun, supra,* at p. 886; cf. *Holmes* v. *McColgan, supra,* 17 Cal.2d at p. 430; *American Civil Liberties Union* v. *Board of Education* (1963) 59 Cal.2d 203, 218 [28 Cal.Rptr. 700, 379 P.2d 4].) A perusal of the pertinent federal law reveals that Congress has established a uniform monetary system designed and intended for nationwide application. (See *Norman* v. *Baltimore & O. R. Co., supra,* 294 U.S. at p. 316 [79 L.Ed. at p. 906]; cf. *Hellermann, supra,* 77 T.C. at pp. 1364-1365.) By resorting to the foregoing authorities plaintiff could have been "reasonably certain" that the taxes imposed by Internal Revenue Code section 61 and its California counterpart, section 17071, would be measured in terms of the national currency. (*Duffy* v. *State Bd. of Equalization, supra,* 152 Cal.App.3d at p. 1173.) Plaintiff received adequate notice her capital gain would be computed in "dollars."[5]

---

[5]Plaintiff requests that we take mandatory judicial notice of the following matters judicially noticed by the trial court (Evid. Code, § 451, subd. (a)): article I, section 8 of the United States Constitution; article XIII, section 11 of the California Constitution; the Sixteenth Amendment to the United States Constitution; the Bretton Woods Agreement (60 Stat. 1401); article XIII, section 26 of the California Constitution; 26 United States Code former sections 314, 392, and 821; and the magnitude of the national debt. We are required to take judicial notice of these items and therefore do so. (Evid. Code, § 459, subd. (a).)

Plaintiff also requests permissive judicial notice (Evid. Code, § 452) of an allegedly rising price of gold and of an alleged decline in the dollar's purchasing power. The latter matters are immaterial to our resolution of this dispute; the request for judicial notice is denied.

## DISPOSITION

The judgment is affirmed.

Regan, Acting P. J., and Sparks, J., concurred.