[No. A105155. First Dist., Div. One. Dec. 7, 2004.]

THE PILLSBURY COMPANY, Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

COUNSEL

Pillsbury Winthrop, Jeffrey M. Vesely, Kerne H. O. Matsubara and Richard E. Nielsen for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Randall P. Borcherding and David Lew, Deputy Attorneys General, for Defendant and Respondent.

OPINION

STEIN, J.—The Pillsbury Company (Pillsbury) appeals from a judgment granting the Franchise Tax Board's (FTB) motion for summary judgment on Pillsbury's complaint seeking a refund of California franchise taxes and interest for the income years June 1, 1985, to May 31, 1986, and June 1, 1986, to May 31, 1987.[1] Pillsbury's refund claim was based upon its assertion that California legislation, in 1987, adopted federal tax provisions that permitted Pillsbury to assign in excess of $168 million of its income to Alaska Native Corporation (ANC) subsidiaries in order to offset that income with the ANC's net operating losses.

We shall affirm the judgment on the ground that the federal tax provisions that permitted Pillsbury's assignment of income to the ANC subsidiaries were not adopted by California when it enacted legislation in 1987 that conformed many of California's tax provisions to federal law. We therefore need not address the alternative ground stated by the trial court for granting the FTB's motion for summary judgment; i.e., that the California legislation was effective only for taxable years beginning on January 1, 1987.

FACTS

Pillsbury is a Delaware corporation, with its principal place of business in the State of Minnesota, and is engaged in business in the State of California. Pillsbury filed a timely California tax return for the income year ended May 31, 1987. In that year, Pillsbury and several ANC's entered into a series of transactions that permitted Pillsbury, under federal law, to assign income in the amount of $168,706,811 to newly created subsidiaries of the ANC's, and thereby utilize their net operating losses to offset the assigned income. Pillsbury obtained a private letter ruling from the Internal Revenue Service, which advised that, under the planned agreement, the ANC's and the newly created subsidiaries would qualify as "affiliated corporations" under the

---

[1] On appeal, Pillsbury challenges the judgment only as it applies to the refund it sought for the income year ended May 31, 1987.

relevant federal tax provisions applicable to ANC's, and that therefore the ANC's "carryover losses and unused tax credits" could be used to offset the assigned income.

In its California return, Pillsbury relied upon this same transaction to, in effect, reduce its taxable income for the year ending on May 31, 1987. The FTB issued a notice of proposed assessment, disallowing the assignment of income to the ANC's, and assessing additional California corporate franchise taxes for the income year ending May 31, 1987, in the amount of $1,039,047. After Pillsbury's administrative protest was denied, Pillsbury filed an appeal to the State Board of Equalization (SBE). The SBE denied the appeal[2] and Pillsbury's petition for rehearing.[3]

Taking into account a revised assessment for the tax year ending May 31, 1986, and an overpayment for the year ending May 31, 1988, Pillsbury paid California taxes and interest in the total amount of $4,430,812.37. Pillsbury timely filed its claim for a refund for the income years ending May 31, 1986, and May 31, 1987, and then filed the instant complaint for a refund, after the time for the FTB to act had expired. The complaint sought a refund in the amount of $4,604,638.28, plus interest.

The FTB filed a motion for summary judgment or in the alternative for summary adjudication and Pillsbury filed a cross-motion for summary judgment. The court filed an order in which it found no triable issues of fact, granted the FTB's motion, and denied Pillsbury's motion. Thereafter, the

---

[2] The SBE denied the appeal on the following grounds: "This is to inform you that on May 4, 2000, the Board of Equalization considered the above-entitled appeal and concluded that the 1986 amendments to the [IRC] regarding the treatment of losses acquired from Alaska Native Corporations were not incorporated into California law and did not alter the definition of Gross Income. Therefore, the Board ordered that the action of the Franchise Tax Board on appellant's protest against the proposed assessments of additional corporate franchise tax in the amounts and for the years set forth . . . be sustained."

[3] The stated grounds for denial of the petition for rehearing were as follows: "The federal Deficit Reduction Act of 1984 (DEFRA 1984) amended Internal Revenue Code (IRC) section 1504 to provide special tax treatment for Alaska Native Corporations (ANC's). The federal Tax Reform Act of 1986 (TRA1986), section 1804(e)(4), made technical corrections to the special ANC provisions in DEFRA 1984. In 1987, the California Legislature adopted a number of technical corrections included in sections 1800 through 1899A of TRA 1986, to the extent that the relevant IRC sections were already incorporated in the Revenue and Taxation Code (RTC) by specific reference. However, California never incorporated IRC section 1504 into RTC by specific reference, and never enacted the provisions of DEFRA 1984 which amended IRC section 1504 to provide special tax treatment for ANC's. Accordingly, the technical corrections concerning ANC's in TRA 1986 section 1804(e)(4) did not modify RTC. Additionally, the federal definition of gross income incorporated in RTC was not modified by California's conformity to TRA 1986. Thus, the technical corrections concerning ANC's in TRA 1986 are irrelevant to appellant's California tax liability."

court entered judgment in favor of the FTB, denying the refund claim, and Pillsbury filed a notice of appeal.

ANALYSIS

Pillsbury's refund claim is based upon its contention that changes in federal law, which permitted the assignment of income by Pillsbury to the ANC's, were adopted in California by legislation in 1987 that conformed many of California Revenue and Taxation Code provisions to federal law. It is therefore essential, before resolving Pillsbury's contention, to summarize and explain the relevant state and federal legislation.

## Federal Legislation

ANC's are organized under the Alaska Native Claims Settlement Act (Pub.L. No. 92-203; codified at 43 U.S.C. §§ 1601–1629) to hold properties transferred to native Alaskans as compensation for extinguishing their land claims to property taken by the federal government in order to construct the trans-Alaskan pipeline. The ANC's incurred large net operating losses (NOL's) that they were not able to use as offsets on federal taxable income because of limitations on carrying the NOL's forward.

Prior to 1984, a profitable corporation could make use of the NOL of another corporation by establishing a joint venture in which the profitable corporation owned less that 50 percent of the voting stock. In order to limit the practice of selling NOL's, Congress enacted section 60 of the Deficit Reduction Act of 1984 (Pub.L. No. 98-369 (July 18, 1984) 98 Stat. 494) to amend section 1504 of the Internal Revenue Code (IRC), which defines affiliated groups,[4] to prevent corporations from engaging in this practice and benefiting by offsetting the income of one with the losses of the other, by establishing more stringent standards for defining an affiliated group.

In subdivision (b)(5) of section 60 of the Deficit Reduction Act of 1984 (hereafter, § 60(b)(5) of the 1984 Federal Act), Congress exempted ANC's from the new, more stringent, voting power and value affiliation tests. "The purpose of § 60(b)(5) [of the 1984 Federal Act] was . . . to allow Native Corporations to raise money by selling their net operating losses . . . and investment tax credits . . . to profitable companies in return for a share of the tax benefit gained by the profitable companies. . . . [¶] This intention was initially frustrated by IRS interpretations restricting the benefits of § 60(b)(5). . . . Specifically, the IRS refused to rule that [IRC] § 269 (relating

---

[4] "Affiliated groups" are permitted by the tax code to file consolidated income tax returns. (See Int.Rev. Code, § 1501 (1987).)

to disallowance of deductions or credits following a tax-avoidance-motivated acquisition) and [IRC] § 482 (relating to the IRS's authority to reallocate income, deductions, or credits among commonly controlled businesses) were inapplicable to Native Corporation-headed affiliated groups." (*Chugach Alaska Corp. v. U. S.* (9th Cir. 1994) 34 F.3d 1462, 1464.)

In 1986, when Congress passed the federal Tax Reform Act of 1986 (Pub.L. No. 99-514 (Oct. 22, 1986) 100 Stat. 2085) (hereafter 1986 Federal Act)), it added clarifying language. Section 1804(e)(4) of the 1986 Federal Act amended section 60(b)(5) of the 1984 Federal Act to provide, in pertinent part, that "no provision of the [IRC] of 1986 (including sections 269 and 482) or principle of law shall apply to deny the benefit or use of losses incurred or credits earned by [an ANC] to the affiliated group of which the Native Corporation is the common parent." It was undisputed that section 1804(e)(4) of the 1986 Federal Act allowed ANC's to acquire stock in a new subsidiary for the purpose of receiving assignments of income from corporations such as Pillsbury, which could be offset by the ANC's NOL's, without complying with the rules for defining affiliated groups and filing of consolidated tax returns that apply to non-ANC's.

*California Legislation*

In 1987, the California Legislature, as part of an act designated the California Bank and Corporation Tax Fairness, Simplification, and Conformity Act of 1987, enacted Chapter 1139, section 231, page 4036 of the 1987 California Statutes (hereafter, section 231 of the 1987 California Act). It provided:

"Sections 1800 to 1899A, inclusive, of the federal Tax Reform Act of 1986 (Public Law 99-514) enacted numerous technical corrections to provisions of the [IRC] which are incorporated into Parts 10 (commencing with Section 17001) and 11 (commencing with Section 23001) of Division 2 of the Revenue and Taxation Code by specific reference to portions of the [IRC]. Unless specifically provided otherwise, those technical corrections made by Public Law 99-514 to the provisions which are incorporated by reference are declaratory of existing law and shall be applied in the same manner as specified in Public Law 99-514."

*Application to Pillsbury's Refund Claim*

Pillsbury's refund claim stands or falls with its assertion that section 231 of the 1987 California Act adopted the federal tax provisions that changed the rules for affiliated groups as applied to ANC's and permitted the assignment of income by Pillsbury to the newly created subsidiaries so that it could be offset with the ANC's net operating losses.

■ Pillsbury initially contends that section 231 of the 1987 California Act adopted section 1804(e)(4) of the 1986 Federal Act because it provides that, for purposes of determining state franchise tax liability, "sections 1800 to 1899A" of the 1986 Federal Act are adopted under California law. To the contrary, although section 1804(e)(4) of the 1986 Federal Act obviously falls within the range of "sections 1800 to 1899A," section 231 of the 1987 California Act does not simply adopt all of these federal provisions without limitation. Instead, section 231 describes "sections 1800 to 1899A" of the 1986 Federal Act as enacting "numerous technical corrections to provisions of the [IRC] *which are incorporated into* Parts 10 (commencing with Section 17001) and 11 (commencing with Section 23001) of Division 2 of the Revenue and Taxation Code *by specific reference to portions of the [IRC]*. Unless specifically provided otherwise, those technical corrections made by Public Law 99-514 *to the provisions which are incorporated by reference* are declaratory of existing law and shall be applied in the same manner as specified in Public Law 99-514 [italics added]." Therefore, the plain terms of section 231 of the 1987 California Act actually provide that the corrections made by sections "1800 to 1899A" of the 1986 Federal Act are adopted only to the extent that these corrections were to provisions of the IRC that are incorporated by reference in a provision of the California Revenue and Taxation Code. (See, e.g., *Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976] ■ [in the absence of ambiguity the plain meaning of a statute governs].)

Pillsbury relies upon a decision of the Minnesota Supreme Court, *Green Giant Co. v. Com'r of Revenue* (Minn. 1995) 534 N.W.2d 710, for the proposition that the plain terms of section 231 of the 1987 California Act adopted section 1804(e)(4) of the 1986 Federal Act. That case is inapposite because, unlike section 231, the Minnesota legislation simply provided, in pertinent part, that "sections 402, 403, 1803, *1804*, 1852, and 1861 of the Tax Reform Act of 1986, Public Law Number 99-514, shall be effective at the same time that they become effective for federal income tax purposes." (*Id.* at p. 711, italics added.) The Minnesota court therefore concluded that, by the plain term of *that statute*, the state had adopted section 1804, including the exception for ANC's set forth in section 1804(e)(4). The plain language of section 231 is quite different, and expressly limits the adoption of "1800 to 1899A" *only to the extent that these corrections were to provisions of the IRC that are incorporated by reference by the California Revenue and Taxation Code.*[5]

---

[5] It is unnecessary to resort to consideration of legislative intent in light of our conclusion that the language of section 231 is not ambiguous, and that its plain terms specify that the technical correction made by sections 1800–1899A are adopted by the State of California only to the extent that the corrections were to provisions of the IRC incorporated by specific reference in the Revenue and Taxation Code.

In light of this express limitation in the language of section 231, on the adoption of "sections 1800 to 1899A," it is necessary to determine whether section 1804(e)(4) of the 1986 Federal Act was a correction to a provision of the IRC incorporated by specific reference into the California Revenue and Taxation Code. Pillsbury attempts to characterize section 1804(e)(4) as a technical correction to section 61 of the IRC, defining "gross income," because section 61 of the IRC *is* expressly incorporated into California Revenue and Taxation Code section 24271. In 1987, California repealed and replaced Revenue and Taxation Code section 24271, so that it now provides that gross income "shall be determined in accordance with section 61 of the [IRC], except as otherwise provided." (Stats. 1987, ch. 1139, § 57, pp. 3993–3994.)[6] Starting with the premise that section 1804(e)(4) amended the federal definition of "gross income," which is expressly incorporated by Revenue and Taxation Code section 24271, Pillsbury asserts section 1804(e) of the 1986 Federal Act therefore was one of the "technical corrections" to the IRC that were adopted by the enactment of section 231 of the 1987 California Act.

The fundamental flaw in Pillsbury's premise is that, by its *express* terms, the 1984 and 1986 federal legislation only amended the corporate affiliation rules established by IRC section 1504, *not* section 61. Neither of these federal provisions concerning ANC's even refer to IRC section 61. Instead, the heading for section 60 of the Deficit Reduction Act of 1984 (Pub.L. No. 98-369 (July 18, 1984) 98 Stat. 494) is "Affiliated Group Defined." Subdivision (a) of section 60 expressly amends IRC "*section 1504* (defining affiliated groups) [italics added]" by imposing more stringent requirements. Subdivision (b)(5) simply excepts ANC's, by providing that "[t]he amendments made by subsection (a) [*to IRC, § 1504*] shall not apply" to an ANC. Similarly, section 1804(e)(4) of the 1986 Federal Act expressly states that its provisions consist of "[a]mendments to *Section 60* of the [1984] Act [italics added]," which amended *IRC section 1504*. Therefore, by its terms, section 1804(e)(4) also amended IRC section 1504, defining affiliated groups, *not IRC section 61, defining gross income.*

Pillsbury nevertheless suggests that section 1804(e)(4) of the 1986 Federal Act, *in effect*, operated as an amendment to the definition of "gross income" in IRC section 61. It relies upon the language of section 1804(e)(4),

---

[6] Pillsbury acknowledges that the express incorporation of section 61 of the IRC did not take place until 1987. Nevertheless, it notes that, even before the reenactment of Revenue and Taxation Code section 24271, expressly incorporating the definition of gross income set forth in IRC section 61, California courts recognized that the California definition of gross income in former Revenue and Taxation Code section 24271 was patterned after the federal definition. (See *Calhoun v. Franchise Tax Bd.* (1978) 20 Cal.3d 881, 884–886 [143 Cal.Rptr. 692, 574 P.2d 763]; *Spurgeon v. Franchise Tax Board* (1984) 160 Cal.App.3d 524, 528 [206 Cal.Rptr. 636].)

specifying that "no provision of the [IRC] of 1986 . . . *or principle of law* shall apply to deny the benefit or use of losses incurred or credits earned by [an ANC] to the affiliated group of which the Native Corporation is the common parent [italics added]." The phrase "principle of law" includes the assignment of income doctrine. (See H.R. Rep. No. 99-841, 2d Sess., p. II–843.) The assignment of income doctrine is a fundamental common law principle of taxation which holds that "[t]he entity earning the income— whether a partnership or an individual taxpayer—cannot avoid taxation by entering into a contractual arrangement whereby that income is diverted to some other person or entity. Such arrangements, known to the tax law as 'anticipatory assignments of income,' have frequently been held ineffective as means of avoiding tax liability." (*United States v. Basye* (1973) 410 U.S. 441, 449–450 [35 L.Ed.2d 412, 93 S.Ct. 1080].)[7] Pillsbury argues that, by providing that the assignment of income doctrine was inapplicable to defeat its transaction with an ANC or ANC subsidiary, the effect of section 1804(e)(4) was to allow Pillsbury "to exclude from its gross income, income assigned to ANC's or ANC subsidiaries." Therefore, Pillsbury suggests that section 1804(e)(4) must have *implicitly* amended the definition of gross income in section 61.

█ The prohibition in section 1804(e)(4) of the 1986 Federal Act against application of the assignment of income doctrine is not, under any reasonable construction, an amendment to IRC section 61. IRC section 61 simply defines what gross income is. The assignment of income doctrine does not concern whether an item is or is not gross income, but rather *which taxpayer* must include it in *its* gross income. If the assignment of income doctrine is applied, then income is attributed to a taxpayer, despite a transaction or contract shifting the income to another person or entity. In other words, it concerns the allocation of income between or among persons or entities. Section 1804(e)(4) enumerated the assignment of income doctrine as one of several legal obstacles that had emerged to prevent ANC's from benefiting from section 60(b)(5) of the 1984 Federal Act, which excepted ANC's from the more stringent affiliated group standards in IRC section 1504, to allow ANC's to sell their net operating losses by acquiring the stock of a subsidiary created with a profitable corporation for the purpose of assigning income to it and offsetting that income with the ANC's net operating losses. By exempting such transactions from application of the assignment of income doctrine,

---

[7] The rationale behind this doctrine is that " '[t]he impact of the graduated income tax is eroded when income is split artificially among several entities or over several tax years. The assignment of income doctrine . . . seeks to recognize "economic reality" by cumulating income diffused among several recipients through "artificial" legal arrangements.' " (*U.S. v. Maginnis* (9th Cir. 2004) 356 F.3d 1179, 1186, fn. 7, quoting *Foglesong v. C.I.R.* (7th Cir. 1980) 621 F.2d 865, 868.)

section 1804(e)(4) of the 1986 Federal Act did not change the definition of gross income in any respect. Nor did it create an exemption or a deduction from gross income.[8] It only provided that when an ANC and a profitable corporation rely on the amendment to IRC section 1504 enacted by sections 60(b)(5) of the 1984 Federal Act to allow income to be assigned to an ANC for the purpose of offsetting it with the ANC's net operating losses, the assignment of income doctrine will not apply to reallocate the income to the corporate taxpayer that purchased the ANC's net operating losses. It was not necessary to amend IRC section 61 to accomplish this purpose. Instead, Congress simply added clarifying language to its prior amendments to IRC section 1504 to exempt transactions, like the one Pillsbury entered into with an ANC, from application of the assignment of income doctrine. We conclude that section 1804(e)(4) of the 1986 Federal Act did not, expressly or implicitly, amend IRC section 61.[9]

■ For the foregoing reasons, Pillsbury's premise, that section 1804(e)(4) of the 1986 Federal Act amended IRC section 61, fails. Instead, by their express terms, section 60(b)(5) of the 1984 Federal Act, and the clarifying amendment set forth in section 1804(e)(4) of the 1986 Federal Act, amended IRC section 1504, defining affiliated groups. Pillsbury does not identify any section of the California Revenue and Taxation Code that incorporates IRC section 1504 by specific reference. Section 23361 of the Revenue and Taxation Code defines "affiliated groups" but makes no reference to IRC section 1504. California, by section 231 of the 1987 California Act, adopted sections "1800 to 1899A" of the 1986 Federal Act only to the extent that these federal corrections were to provisions of the IRC that were incorporated by specific reference by the California Revenue and Taxation Code. Therefore, the absence of any provision in the Revenue and Taxation Code

---

[8] Pillsbury, in its reply brief, acknowledges that its refund claim is not based upon either a claimed exemption or deduction from its gross income. An exemption or deduction results in no tax being paid on income to which the exemption or deduction applies. Here, there is no dispute that the income assessed to Pillsbury is *someone's* gross income. The question is who will be taxed on it, Pillsbury or the ANC and the newly formed subsidiary affiliated with the ANC to which the income was assigned.

[9] Pillsbury also cites several cases that discuss the assignment of income doctrine, in the context of applying IRC section 61. (See, e.g., *Foglesong v. C.I.R.*, *supra*, 621 F.2d at p. 868; *Ferguson v. C.I.R.* (9th Cir. 1999) 174 F.3d 997.) Pillsbury asserts that these cases support its contention that section 1804(e)(4) of the 1986 Federal Act, at least implicitly, amended the definition of gross income. To the contrary, these decisions merely illustrate the obvious relationship between the assignment of income doctrine and the determination of the gross income of a particular taxpayer. When the assignment of income doctrine is applied, it may affect the *amount* of a taxpayer's gross income by reallocating the income to the taxpayer who tried to shift it away. But the question before us is not whether these concepts are related, but rather whether, by specifying in section 1804(e)(4) that the assignment of income doctrine did not apply to certain transactions with an ANC, the Legislature amended the definition of gross income set forth in IRC section 61. For the reasons stated in the text, *ante*, we conclude it did not.

incorporating by reference IRC section 1504 compels the conclusion that the federal amendments made by section 60, including subdivision (b)(5) of the 1984 Federal Act to IRC section 1504, and the clarifying language added by section 1804(e)(4) of the 1986 Federal Act, were not adopted by section 231 of the 1987 California Act.[10] (See, e.g., *Lennane v. Franchise Tax Bd., supra,* 9 Cal.4th at p. 268 [in the absence of ambiguity the plain meaning of a statute governs].)

CONCLUSION

The judgment is affirmed.

Marchiano, P. J., and Margulies, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 16, 2005. Brown, J., did not participate therein.

---

[10] Since neither sections 1804(e)(4) of the 1986 Federal Act and section 60(b)(5) of the 1984 Federal Act, nor IRC section 1504 have been adopted under California law, the private letter ruling that Pillsbury obtained from the IRS advising that the transaction complied with "the Alaska Native Corporation exception to section 1504(a) of the [IRC]," is irrelevant to the merits of Pillsbury's refund claim. We therefore need not resolve the question of what weight should be accorded to such a letter if California law included a similar set of rules applicable to affiliated groups involving ANC's and exemption from the application of the assignment of income doctrine.