T.C. Memo. 1998-322


UNITED STATES TAX COURT


DOUGLASS H. AND SUZANNE M. BARTLEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 14941-97.          Filed September 10, 1998.


Douglass H. and Suzanne M. Bartley, pro sese.

<u>Frederic J. Fernandez</u> and <u>Mark J. Miller</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  Respondent determined a $12,952 deficiency in petitioners' 1993 Federal income tax and a section 6662(a) accuracy-related penalty.  Following concessions by petitioners, the issues for decision are (1) whether petitioners must include as income the gain realized from the sale of their residence in 1993,

and (2) if that gain is includable in petitioners' 1993 income, then whether petitioners' failure to report it subjects petitioners to liability for the section 6662(a) accuracy-related penalty.[1]

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulation of facts is incorporated in our findings by this reference. Petitioners resided in Ely, Minnesota, at the time they filed their petition.

### Background

Douglass H. Bartley (petitioner) received a bachelor of arts degree in business administration from the University of Arizona in 1970 and a juris doctor degree from the University of Arizona Law School in 1973. Petitioner had a private law practice in Milwaukee, Wisconsin, until 1980; at that time, he moved to Washington, D.C., and began working at Washington Gaslight Co. In approximately 1983, he returned to his private practice in Milwaukee.

---

[1] On May 5, 1998, respondent filed a motion to impose a sec. 6673 penalty. On July 10, 1998, respondent filed a motion to withdraw the May 5 motion. On July 14, 1998, we granted respondent's motion to withdraw the motion to impose a sec. 6673 penalty.

In April 1987, the Governor of Wisconsin appointed petitioner a commissioner (the equivalent of a State tax court judge) to the Wisconsin Tax Appeals Commission (the commission). This was a part-time position. (As a part-time commissioner, petitioner was permitted to maintain his private law practice.) Petitioner received $50,000 in yearly compensation as a commissioner. In 1992, he was appointed to a full-time position on the commission to fill the remainder of an unexpired term (March 31, 1993) of a commissioner who had resigned. (By accepting the full-time position, petitioner was required to abandon his private law practice.) Petitioner was not reappointed at the end of the interim term, and he thereafter returned to private practice, spending a substantial amount of his practice on Federal and State tax law issues.

Sale of Residence

On September 28, 1987, petitioners purchased a house in Mequon, Wisconsin (the Mequon residence), for $155,000. In late 1987, they built an addition to the Mequon residence (which was completed in January 1988) costing $48,606, so that petitioner's mother could live with them. She paid rent to petitioners.

Petitioners used 83 percent of the Mequon residence for personal purposes and 17 percent for rental purposes.

In 1991, petitioners spent $9,475 on further improvements to the Mequon residence. Between 1988 and 1992, petitioners claimed

depreciation of $4,913 on the rental portion of the Mequon residence.

As a consequence of petitioner's departure from the commission, petitioners could no longer afford the monthly mortgage payments; thus petitioners sold their Mequon residence for $270,000 on June 15, 1993.

The parties stipulated that the adjusted basis of the Mequon residence on the date of sale was $213,582, and that the selling expenses totaled $21,191 (of which $17,588 was allocated as personal expenses and $3,603 as rental expenses).[2] Thus, the gain on the sale of petitioners' Mequon residence was $40,140. (The amount of gain is not in dispute.)

In June 1993, petitioners purchased land in Ely, Minnesota, and built a cabin thereon (the Ely residence), costing $66,588. They began living there in October 1993. On February 1, 1994, petitioners sold the Ely residence for $66,588. Subsequently, they moved into a rental apartment.

Federal Income Tax Return

Petitioners neither reported any capital gain on the sale of their Mequon residence on their 1993 Federal income tax return nor attached thereto a Form 2119, Sale of Your Home.

---

[2] At closing, after subtracting the unpaid balances of three mortgages totaling $192,251 and the selling expenses, petitioners received $50,533 of the proceeds.

During 1996, petitioners were audited by one of respondent's agents. The auditor requested information from petitioners with respect to the sale of their Mequon residence. On September 16, 1996, petitioners provided Form 2119 and Form 4797, Sales of Business Property, to the Internal Revenue Service auditor assigned to their case. However, petitioners did not execute either form.

Notice of Deficiency

In the notice of deficiency, respondent determined that the capital gain petitioners received from the sale of their Mequon residence was includable in their 1993 income. Respondent calculated petitioners' capital gain in the following manner:

|  | Total | Personal 83% | Business 17% |
|---|---|---|---|
| Sale price | $270,000 | $224,100 | $45,900 |
| Add: Depreciation allowed | 4,913 | --- | 4,913 |
| Less: Adjusted basis in property | (213,582) | (177,273) | (36,309) |
| Selling expenses | (21,191) | (17,588) | (3,603) |
| Capital gain on sale of property | 40,140 = | 29,239 + | 10,901 |

OPINION

Issue 1. Gain From Sale of Home

The first issue is whether petitioners must include as income the capital gain realized from the sale of their Mequon residence in 1993. Respondent maintains that because petitioners failed to satisfy the requirements of section 1034, they should have reported

the capital gain. Petitioners, on the other hand, advance constitutional and equitable arguments as to why the capital gain is not includable in income.

a.  Section 1034

Generally, sections 1001 and 61 require a taxpayer to recognize in the year of the sale gain realized on the sale of property.  Section 1034,[3] which provides an exception to this general rule, allows a taxpayer, in certain circumstances, to defer recognition of all gain realized on the sale of the taxpayer's principal residence (referred to as the old residence) if (1) other property (referred to as the new residence) is purchased and used by the taxpayer as a new principal residence within the period beginning 2 years before the date of the sale and ending 2 years after the date, and (2) the adjusted sale price of the old

---

[3]    Sec. 1034 was repealed by sec. 312(b) of the Taxpayer Relief Act of 1997, Pub. L. 105-34, 111 Stat. 839, generally effective for sales and exchanges of principal residences after May 6, 1997.  (The repeal of sec. 1034 was part of the capital gains relief provided to individual taxpayers by the Taxpayer Relief Act of 1997.)  The sec. 1034 rollover provision was replaced by an expanded and revised sec. 121, which generally provides for the nonrecognition of up to $500,000 of gain realized from the sale of a principal residence by married taxpayers filing a joint return, and up to $250,000 of gain realized by all other individual taxpayers, if during the 5-year period ending on the date of the sale or exchange, the property has been owned and used by the taxpayer as the taxpayer's principal residence for a period aggregating 2 or more years. This exclusion is not predicated on the reinvestment of gain in a new home.

References hereinafter to sec. 1034 are to that provision as in effect during the year in issue, 1993.

residence is less than the cost of the new residence. Sec. 1034(a), (c). Section 1034(b)(1) defines "adjusted sales price" as the amount realized on the sale of the old residence (selling price minus selling expenses) reduced by expenses of fixing up the residence in preparation for sale. Thus, if the cost of the new residence equals or exceeds the adjusted sale price of the old residence, the entire gain on the sale of the old residence must be deferred. (We note that section 1034 is mandatory, so that a taxpayer cannot elect to have gain recognized where the section is applicable. Sec. 1.1034-1(a), Income Tax Regs.) If the cost of the new residence is less than the adjusted sale price of the old residence, gain must be recognized to the extent the adjusted sale price of the old residence exceeds the cost of the new residence, but not greater than the amount realized on the sale. Sec. 1.1034-1(a), Income Tax Regs. The deferral of gain is accomplished by reducing the basis of the new residence by the amount of gain not recognized on the sale of the old residence (i.e., the unrecognized gain is rolled over into a lower basis for the new residence). Sec. 1034(e). Finally, pursuant to section 1.1034-1(i)(1), Income Tax Regs., any gain recognized from the sale of the old residence is includable in gross income for the taxable year in which the gain was realized. (Section 1034 does not apply to losses; losses are recognized or not recognized without regard to the provisions of section 1034.)

Petitioners bear the burden of showing their entitlement to the nonrecognition of income benefits of section 1034 by proving that they have satisfied all of the section's requirements. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Income tax provisions which exempt taxpayers under given circumstances from paying taxes or permit them to postpone taxes are narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995); Commissioner v. Baertschi, 412 F.2d 494, 499 (6th Cir. 1969), revg. and remanding 49 T.C. 289 (1967). In fact, this Court has indicated that section 1034 must be strictly construed. See, e.g., Boesel v. Commissioner, 65 T.C. 378, 390 (1975); Lokan v. Commissioner, T.C. Memo. 1979-380.

Although petitioners purchased the Ely residence within 2 years of selling the Mequon residence, the adjusted sale price of the Mequon residence ($248,809) exceeded the cost of the Ely residence by $182,221, which in turn exceeded the $40,140 gain realized on the sale. Thus, because petitioners did not meet the requirements of section 1034, they must include the $40,140 gain realized in their 1993 income.

b. Constitutional Arguments

Petitioners contest the constitutionality of any statutory provisions or Internal Revenue Service (IRS) actions (or inactions) which result in capital gain from the sale of their Mequon residence, arguing as follows: (1) The capital gain respondent

determined is a violation of their equal protection and due process rights because section 1034 favors wealthy taxpayers and discriminates on the basis of age; (2) the gain from the sale of their Mequon residence is "fictitious", resulting solely from inflation, and because there was no "real gain", there is no income subject to taxation; and (3) because the IRS does not recognize either nominal or real losses on the sale of a residence, gain from the sale of a residence cannot be taxed.[4]  Not surprisingly,

---

[4]     In their petition, petitioners state as follows:

> a.  Taxing "gain" on the sale of our residence has no rational basis and violates the Equal Protection component of the 5th Amendment Due Process Clause because:

> (1)  The tax invidiously discriminates in favor of wealthy homeowners and against those less fortunate.  The wealthier homeowner, who trades up to a more expensive house, has no taxable gain.  In contrast, the less affluent homeowner, who can't afford a more expensive house or must move into rental quarters, gets taxed merely because he can't come up with enough to buy anything or because he can't afford to buy a house of equivalent or greater price.

> (2)  The tax also invidiously discriminates on the basis of age. Those who are 55 or older get an exclusion that no one else qualifies for.

> b.  Taxing the "gain" violates the Due

(continued...)

respondent disagrees with each of petitioners' arguments. We agree with respondent.

First, we do not agree that taxing the capital gain realized on the sale of petitioners' Mequon residence is a violation of petitioners' equal protection rights. The Fifth Amendment to the Constitution protects against the deprivation of life, liberty, or property without due process of law. The Due Process Clause of the Fifth Amendment provides protection against Federal discriminatory action "so unjustified as to be violative of due process". Shapiro v. Thompson, 394 U.S. 618, 642 (1969); Bolling v. Sharpe, 347 U.S. 497-499 (1954); Ward v. Commissioner, 608 F.2d 599 (5th Cir. 1979), affg. per curiam T.C. Memo. 1979-39. Further, the Due Process Clause of the 5th Amendment has been held to incorporate the Equal

---

[4](...continued)
Process Clause of the 5th Amendment, because it transforms a real loss into a fictitious gain and creates phantom income or distorts income beyond any reasonable proportions. IRS wrongfully fails to recognize the phenomenon of inflation, as explained more fully below.

c. The house "gain" taxing scheme violates the Equal Protection component of the 5th Amendment for an additional reason, namely because IRS refuses to recognize either nominal or real losses on the sale of a residence, even though it readily taxes nominal gains. That results in disparate treatment as between homeowners who cannot deduct losses and businesses which can because businesses can deduct those losses.

- 11 -

Protection Clause of the 14th Amendment. Johnson v. Robison, 415 U.S. 361, 364-365 n.4 (1974); Ward v. Commissioner, supra; Stevenson v. Commissioner, T.C. Memo. 1981-127.

Under equal protection analysis, a classification in a Federal statute is subject to strict scrutiny only if it interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class. Regan v. Taxation with Representation, 461 U.S. 540, 547 (1983); Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312 (1976); San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 16-17 (1973). Neither circumstance is present here. Wealth discrimination alone is insufficient to require strict scrutiny; such review of wealth classifications has been applied only where the discrimination affects an important individual interest. See, e.g., San Antonio Indep. Sch. Dist. v. Rodriquez, supra at 24, 29; Harper v. Virginia State Bd. of Elections, 383 U.S. 663 (1966).

Where a tax statute results in differing treatment of different classes of persons, the statute generally is not in violation of the Fifth Amendment because of the different treatment if it has a rational basis. Regan v. Taxation with Representation, supra; United States v. Maryland Savings-Share Ins. Corp., 400 U.S. 4 (1970). Furthermore, it is especially difficult to demonstrate that no rational basis exists for a classification in a revenue measure for which the presumption that an act of Congress is

constitutional is particularly strong.  Black v. Commissioner, 69

T.C. 505, 507-508 (1977); Nammack v. Commissioner, 56 T.C. 1379,

1383 (1971), affd. per curiam 459 F.2d 1045 (2d Cir. 1972).

Legislatures have particularly broad latitude in creating

classifications and distinctions in tax statutes.[5]

In the case before us, no denial of the equal protection or

due process provisions of the Constitution has occurred.  Section

1034 has a rational basis as enacted by Congress in the Revenue Act

of 1951, ch. 521, 65 Stat. 452.  Congress enacted section 112(n),

the predecessor to section 1034, as an amendment to the 1939

---

[5]    The wide scope of powers of the legislature under the 14th Amendment in the matter of classification was discussed at length by the Supreme Court in Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 509-510 (1937):

> It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation.

> Like considerations govern exemptions from the operation of a tax imposed on the members of a class.  A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. [Citations omitted.]

Internal Revenue Code, recognizing that the disposition of one residence and the acquisition of another were often necessitated by a change in the size of the taxpayer's family, a change in the taxpayer's place of employment, or other circumstances beyond the taxpayer's control. As the Ways and Means Committee report, H. Rept. 586, 82d Cong., 1st Sess. (1951), 1951-2 C.B. 357, 377-378, explained:

> H. Gain From Sale Or Exchange Of The Taxpayer's Residence.
>
> this bill amends the present provisions relating to a gain on the sale of a taxpayer's principal residence so as to eliminate a hardship under existing law which provides that when a personal residence is sold at a gain the difference between its adjusted basis and the sale price is taxed as a capital gain. The hardship is accentuated when the transactions are necessitated by such facts as an increase in the size of the family or a change in the place of the taxpayer's employment. In these situations the transaction partakes of the nature of an involuntary conversion. * * *

See Clapham v. Commissioner, 63 T.C. 505, 511 (1975); see also S. Rept. 781, 82d Cong., 1st Sess. (1951), 1951-2 C.B. 458, 482-484, 566-570; Staff of Joint Comm. on Taxation, Summary of Provisions of the Revenue Act of 1951, at 389-310 (J. Comm. Print 1951), 1951-2 C.B. 287, 309-310.

Over the years, the governing Code provision has changed slightly. See H. Rept. 1337, 83d Cong., 2d Sess. A268-A269 (1954). The rules under section 1034 during the year in issue are substantially similar to those Congress adopted in 1951. The major

change to section 1034 (other than its repeal) has been the extension of the period for acquisition or construction of a new residence from 1 year to 18 months by the Tax Reduction Act of 1975, Pub. L. 94-12, sec. 207(a), 89 Stat. 32, and then to 2 years by the Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 122(b), 95 Stat. 197.

It is clear from the legislative history that Congress viewed the deferral of capital gains tax as a means to alleviate hardships for growing families purchasing a new home and for taxpayers changing employment and thus needing to purchase a new residence. Because a rational basis exists for the gain deferral under section 1034, this provision is constitutional and does not violate petitioners' equal protection rights.

In repealing section 1034 in the Taxpayer Relief Act of 1997, sec. 312(b), it appears that Congress addressed petitioners' concern that the "poor" were penalized through section 1034:

> To postpone the entire capital gain from the sale of a principal residence, the purchase price of a new home must be greater than the sales price of the old home. This provision of present law encourages some taxpayers to purchase larger and more expensive houses than they otherwise would in order to avoid tax liability, particularly those who move from areas where housing costs are high to lower-cost areas. This promotes an inefficient use of taxpayer's financial resources.

H. Rept. 105-148, at 761-762 (1997). Thus, in 1997, Congress repealed section 1034 and revised section 121 because, among other

things, section 1034 was generally more useful when trading up a residence. As the excerpt above illustrates, presumably Congress realized that section 1034 favored wealthy taxpayers. However, this does not equate to a constitutional violation. See, e.g., Black v. Commissioner, supra.

We now turn to petitioners' age discrimination argument. Section 121,[6] a companion to section 1034,[7] permitted taxpayers 55 and older to exclude from gross income up to $125,000 of gain from the sale of property which they had owned and used as their principal residence for 3 or more of the 5 years immediately before the sale. The purpose of the section 121 exclusion rule was to enable an older taxpayer to sell his home without being required to pay tax on the realized appreciation or invest all the proceeds from the old residence in a new residence. Congress concluded that although section 1034 generally provided adequately for the younger taxpayer who changed residences, it did not provide adequate tax benefits for the taxpayer whose family had grown up and who no

_____

[6] The one-time exclusion for gain on the sale of residences applied to homes sold before May 7, 1997. Sec. 121 was amended by sec. 312(a) and (d)(1), Taxpayer Relief Act of 1997, 111 Stat. 836, 839.

[7] Sec. 121 differed from sec. 1034 as follows: (1) Under sec. 121, a $125,000 ceiling existed on the amount of gain excludable ($62,500 in the case of a separate return by a married individual); (2) sec. 121 permanently excluded the gain from income instead of only postponing recognition and could be used only once in a lifetime; (3) sec. 121 was available only to taxpayers over 55 years old; and (4) the sec. 121 exclusion was elective and did not require the purchase of a new residence.

longer needed the family homestead.[8]  See, e.g., H. Rept. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 125, 169-171, 284-288; S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part

---

[8]     In adopting this one-time exclusion provision, Congress' intent was as follows:

> The Congress believed that the taxes imposed upon an individual with respect to gain that he or she realizes on the sale or exchange of his or her principal residence, in many instances, may be unduly high, especially in view of recent inflation levels and the increasing cost of housing. The Congress believed that, in most situations, the nonrecognition provisions of present law operate adequately to allow individuals to move from one residence to another without recognition of gain or payment of tax.  However, where an individual has owned his or her principal residence for a number of years and sells it either to purchase a smaller, less expensive dwelling, or to move into rental quarters, any tax due on the gain realized may be too high.  While the provisions of prior law relating to the exclusion of gain by taxpayers who attained the age of 65 may ameliorate this situation somewhat, the Congress believed that the prior dollar limits and age restriction were unrealistic in view of increasing housing costs and decreasing retirement ages.  In addition, the Congress believed that the holding period of a principal residence which is involuntarily converted should be tacked to that of a replacement residence for purposes of meeting the use and occupancy requirements needed to qualify for the exclusion upon a sale of the replacement residence.

Staff of Joint Comm. on Taxation, General Explanation of the Revenue Act of 1978, at 255-256 (J. Comm. Print 1979).

2) 505, 555-557. Congress believed that a rollover under section 1034 may not be feasible because the older taxpayer often wants to purchase a less expensive home or move to a rented residence at another location and may also need the proceeds from the sale of the old residence to meet living expenses in the retirement years.

In <u>Woolf v. Commissioner</u>, T.C. Memo. 1981-286, we held that a rational basis existed for allowing the section 121 exclusion, and thus the exclusion did not result in any constitutional violations. We reasoned that in the case of certain older individuals, Congress made a reasonable attempt to provide for those individuals who, because of their age and particular situation in life, may wish to change residences. We stated: "We, accordingly, find no constitutional violation resulting from the fact that * * * [the taxpayers'] tax consequences may have been different from those of other individuals who sold their personal residences".[9] <u>Id.</u> "'No

---

[9] In fact, there were a number of other sections in the Internal Revenue Code that provided for differing tax treatment depending upon the taxpayer's age. For instance, a taxpayer who attained age 25 before the close of the computation year and was not a full-time student during the 4 taxable years commencing upon attaining the age of 21 and ending with the computation year would be eligible for income averaging. Former sec. 1303(c)(2)(A) (Tax Reform Act of 1986, Pub. L. 99-514, sec. 141(a), 100 Stat. 2117, repealed sec. 1303, applicable to tax years beginning after Dec. 31, 1986); see <u>Baldwin v. Commissioner</u>, 84 T.C. 859, 869 (1985).

In addition, if a taxpayer fails to roll over distributed retirement funds within 60 days, and the distribution is made before the date the taxpayer attains the age of 59-1/2, and none of the other exceptions in sec. 72(t)(2) applies, the tax on the distribution is increased by an amount equal to 10 percent of the

(continued...)

scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact.'" Druker v. Commissioner, 77 T.C. 867, 872 (1981) (quoting San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. at 42), affd. in part on this issue and revd. in part on another issue 697 F.2d 46 (2d Cir. 1982).

In sum, we hold that no denial of the equal protection or due process provisions of the Constitution has occurred herein.

### c. Equitable Arguments

Petitioners maintain that to tax the gain from the sale of their Mequon residence because they could not afford to purchase another house of equal or greater value constitutes "blatant discrimination on the basis of wealth." Petitioners' economic hardship situation does not alleviate their obligation to report the gain on the sale of their Mequon residence, as required by section 1034. To petitioners this result may appear inequitable. Petitioners essentially are requesting the Court to ignore the plain language of the statute and rewrite the statute to achieve what they regard as an equitable result. See Hildebrand v. Commissioner, 683 F.2d 57, 58-59 (3d Cir. 1982), affg. T.C. Memo. 1980-532. This we cannot do. We cannot alter the plain reading of the statute. Petitioner has not cited any authority for us to

---

[9](...continued)
portion includable in gross income. Sec. 72(t).

provide the relief he requests. "The proper place for a consideration of petitioner's complaint is the Halls of Congress, not here [Tax Court]." Hays Corp. v. Commissioner, 40 T.C. 436, 443 (1963), affd. 331 F.2d 422 (7th Cir. 1964).

In addition, petitioners argue that taxpayers are unfairly treated when the value of their home increases because of inflation. They contend that

> The $40,140 of alleged gain is fictitious, for the IRS gain computation assumes that the taxpayers' 1987 purchase dollars are equivalent to 1993 sale dollars. If equivalent dollars are used to compute gain here, the $40,140 "gain" becomes a loss of $8,397. An income tax may not be imposed on a loss without violating IRC § 61 and the Due Process Clause of the Fifth Amendment.

Other taxpayers have raised the argument of inflation as grounds for failing to report income. We have consistently rejected this argument. See Hellermann v. Commissioner, 77 T.C. 1361 (1981); Milkowski v. Commissioner, T.C. Memo. 1981-225; Downing v. Commissioner, T.C. Memo. 1983-97. The taxpayers in Hellermann made arguments similar to those advanced by petitioners: That gain from the sale of their buildings was due to inflation; that their gain was nominal; and that the portion of their nominal gain that was due to inflation does not constitute taxable income. 77 T.C. at 1362-1363. The taxpayers therein also used the Consumer Price Index to illustrate the effects of inflation and what was alleged to be their nominal gain. Id. at 1362. Responding to that

argument, we therein stated "that we have several times denied taxpayers deductions for losses due to inflation, on grounds that the tax law is not written to account for inflation." Id. at 1363.[10] We further determined that nominal gain is taxable because of (1) the doctrine "that Congress has the power and authority to establish the dollar as a unit of legal value with respect to the determination of taxable income, independent of any value the dollar might also have as a commodity" (citations omitted), and (2) the doctrine of common interpretation, which defines income on the basis of the understanding of a lay person, not an economist. Id. at 1364, 1366. We held in the Commissioner's favor, concluding that (1) the taxpayers' use of the Consumer Price Index (including any other method measuring inflation) to calculate taxable income is irrelevant, and (2) nominal gain is taxable income. Id. at 1363-1364; see also Sibla v. Commissioner, 68 T.C. 422, 430-431 (1977) (holding that the taxpayer was neither entitled to a deduction nor any other adjustment to his gross income because of the fact that the value of a dollar may have declined in relation to silver or gold), affd. 611 F.2d 1260 (9th Cir. 1980); Gajewski v. Commissioner, 67 T.C. 181, 194-195 (1976) (holding that the value of the dollar is "irrelevant for purposes of computing * * * [a taxpayer's] taxable income", and "for purposes of the tax law,

---

[10] We note that when Congress desires to take inflation into account, it does so by statute. See, e.g., secs. 1(f), 151.

a dollar is what Congress says it is, without regard to intrinsic value or lack thereof"), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Notter v. Commissioner, T.C. Memo. 1982-96. Accordingly, we dismiss petitioners' argument with regard to the effect of inflation.

Finally, petitioners argue that because section 1034 does not apply to losses, there is "disparate treatment" between homeowners and businesses. We recognize that because a residence is, by definition, for personal use, a loss incurred on its sale is not deductible. See secs. 165, 262. However, a loss is recognizable on the sale of a home if it was converted to rental property prior to its sale. See sec. 165(c).

Although petitioners' nominal gain may or may not equal their real gain in an economic sense, neither the Constitution nor tax laws "embody perfect economic theory". See Weiss v. Wiener, 279 U.S. 333, 335 (1929).

d. Conclusion

On the basis of the foregoing analysis, we hold that the gain realized from the sale of petitioners' Mequon residence is taxable in 1993. Moreover, respondent's computation of gain is sustained.

Issue 2. Section 6662(a) Accuracy-Related Penalty

The second issue is whether petitioners are liable for the section 6662(a) accuracy-related penalty for negligence. Section 6662 imposes an accuracy-related penalty for negligence and

intentional disregard of rules and regulations. Negligence is defined as the "`lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" See Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding per curiam 43 T.C. 168 (1964)).

Petitioners argue that the portion of the negligence penalty attributable to the gain on the residence is "unjustified because the gain is not taxable in the first place and because petitioners were not negligent in any event in that they did report the sale transaction and its details in a timely fashion." We disagree.

Petitioner was a well-educated attorney who spent a substantial part of his career in tax law. He is a former Wisconsin Tax Appeals commissioner. It is evident that he was familiar with Federal and State tax law. Although petitioner was fully aware of petitioners' duty to report the capital gain on the Mequon residence, petitioners failed to file Form 2119 with their 1993 income tax return.[11] The taxpayer must file Form 2119 to notify the IRS of the sale for the tax year in which the old residence is sold, whether or not gain is realized. Sec. 1.1034-

---

[11] Generally, cash basis taxpayers must include all items of income in the gross income for the taxable year in which actually or constructively received. Sec. 451(a); sec. 1.451-1(a), Income Tax Regs.

1(i), Income Tax Regs. Furthermore, petitioners provided Forms 2119 and 4797 on September 16, 1996, only after being requested to do so by the IRS auditor; but they failed to execute the forms.[12]

Petitioners failed to satisfy the requirements of section 1034. Petitioner, as a tax attorney and former Wisconsin Tax Appeals commissioner, knew, or at least should have known, of the section 1034 requirements; he chose not to follow them. Petitioners failed to demonstrate that they were not negligent. See, e.g., Milkowski v. Commissioner, T.C. Memo. 1983-406; Notter v. Commissioner, T.C. Memo. 1982-96. Indeed, the record indicates that they were.

Accordingly, we sustain respondent's determinations with respect to the section 6662(a) accuracy-related penalty.

To reflect the foregoing and petitioners' concessions,

Decision will be entered for respondent.

---

[12] Petitioners argue that they filed a 1994 Form 2688, Application for Additional Extension of Time To File U.S. Individual Income Tax Return, which notified the IRS of the sale of the Mequon residence. At most, Form 2688 notified respondent that petitioners sold a residence in 1994, which would have been their Ely residence.